**CHICAGO TITLE INSURANCE COMPANY, Plaintiff,**

v.

**The RESOLUTION TRUST CORPORATION, et al., Defendants.**

Civ. A. No. 2:93–2040–22.

United States District Court,
D. South Carolina,
Charleston Division.

July 27, 1994.

**136**

James William Bradford, Jr., Michael W. Tighe, Columbia, SC, for plaintiff.

John Joseph Dodds, III, Mt. Pleasant, SC, for defendant.

Joseph S. Mondelsohn, court appointed trustee of trust accounts of Franklin E. Robson.

## ORDER

CURRIE, District Judge.

This is an action brought to determine the ownership of approximately $63,399 of funds formerly maintained in the "Franklin E. Robson Escrow Agent" lawyer's trust account, Account No. 82568, at Citadel Federal Savings and Loan Association (hereinafter "New Bank"), the successor institution to Citadel Federal Savings Bank (hereinafter "Failed Bank"). Jurisdiction is alleged to be based on 12 U.S.C. § 1441(a)(*l*)(1).

The matter is presently before the court on the following three motions filed by Defendant Resolution Trust Corporation (hereinafter "RTC"): (1) Motion to Dismiss Plaintiff's Second Amended Complaint, pursuant to Rule 12(b)(1), Fed.R.Civ.P.; (2) Motion to Dismiss Defendant Mendelsohn's Cross–Claim, pursuant to Rule 12(b)(1), Fed.R.Civ. P.; and (3) Motion to Alter or Amend Judgment, pursuant to Rule 59(e), Fed.R.Civ.P. Those motions denominated as (1) and (2) above came on for a hearing before the court on April 29, 1994, along with a joint motion by Plaintiff and Defendant Mendelsohn for preliminary injunctive relief pursuant to Rule 65, Fed.R.Civ.P. At the April 29 hearing the court took motions (1) and (2) above under advisement, but granted the joint motion for preliminary injunctive relief, and ordered the RTC to remit within ten days the monies seized by it to Defendant Mendelsohn. Subsequent to the hearing, Defendant RTC filed motion (3) above, which the court has fully considered along with its review of the entire record in this matter. For the reasons set forth below, the court denies both motions to dismiss by RTC. The motion for preliminary injunctive relief will be ruled on at the conclusion of a Rule 65 hearing to be scheduled at a later time. RTC's motion to alter or amend judgment is mooted by the court's action on the preliminary injunction motion.

## I. FACTS

The complicated set of facts surrounding this controversy began in April 1992 when Charleston attorney Franklin E. Robson conducted the refinancing of two residential home loans secured by mortgages on properties owned by the Rautons and Sigwalds. On April 24, 1992, a new mortgage on the Rauton property in the amount of $115,000 was issued, and was held by Southern National Bank of South Carolina. On April 29, 1992, a new mortgage on the Sigwald property in the amount of $96,150 was issued, and was held by First Union Mortgage Corporation. Plaintiff Chicago Title issued mortgage title insurance on the two above mortgages in the refinancing of the loans[1].

Pursuant to his duties as attorney retained to conduct the refinancings of the two above loans, Robson received certain monies from the new mortgages, deposited them into his

---

1. The individual homeowners did not purchase separate owners' title insurance policies in the refinancing of the loans; thus, each homeowner is still liable to the current holder of the prior mortgages, which is Plaintiff, for the first mortgage balance. Plaintiff has agreed to apply any recovery from this case *pro tanto* to the balance owed by the homeowners.

attorney trust account, and was to disburse those funds, in part, to the satisfaction of the previous mortgages on the properties.[2] Robson received new monies from Southern National for the Rautons' refinancing in the amount of $115,000 and for the Sigwalds' refinancing in the amount of $96,150 from First Union, and he deposited them into an account named "Robson Law Firm, P.A. Escrow Account," at South Carolina National Bank on April 24 and April 30, 1992. This was Robson's real estate account. Instead of applying most of the new monies to the satisfaction of the prior mortgages, however, Robson, on May 5, 1992, wrongfully converted $63,399 from the real estate account, and deposited it into an interest-bearing account at Failed Bank. Ten days later, on May 15, 1992, Robson transferred the same amount from that account to Account No. 82568 with Failed Bank, denominated as "Franklin E. Robson Escrow Agent."

On August 7, 1992, Failed Bank was closed and the RTC was appointed its Receiver. On the same date a new mutual savings association, New Bank, was chartered. The RTC was appointed Conservator of New Bank. RTC entered into a Purchase and Assumption Agreement with RTC as Conservator under which the RTC as Conservator acquired certain assets and assumed certain liabilities of Failed Bank, including the monies in Account No. 82568.

In August 1992 Plaintiff became aware that Failed Bank/Rautons' mortgage and the Diamond/Sigwalds' mortgage had not been satisfied of record, constituting defects under the Plaintiff's mortgagee's title insurance policies with Southern National and First Union. To protect the first lien status of the mortgages it insured, Plaintiff purchased the notes and mortgages from the successors in interest to Failed Bank and Diamond. Plaintiff then subordinated the liens of Failed Bank/Rautons' mortgage and of Diamond/Sigwalds' mortgage to the liens of its insured mortgages in favor of Southern National and First Union. Plaintiff expended approximately $70,000 to purchase the Rau-

tons' note and mortgage and $90,000 to purchase the Sigwalds' note and mortgage.

On September 14, 1992, Robson was temporarily suspended from the practice of law by the Supreme Court of South Carolina, and Defendant Mendelsohn, a Charleston attorney, was appointed Protector of the files and Trustee of the Trust Accounts of Robson. The order suspending Robson, signed by then Chief Justice Harwell, enjoined any bank or other financial institution from making further payment from any trust or escrow account except as approved by the Court. The banks were given opportunity to file a return within ten days as to whether they should be so enjoined. By letter dated September 16, 1992, Mendelsohn informed New Bank of Robson's suspension, and served a copy of the order placing Mendelsohn in charge of Robson's escrow accounts and freezing those accounts on New Bank.

During that same period of time the RTC had a dispute with Robson concerning monies the RTC contended were owed to it as a result of a real estate transaction with the Merediths in which Robson acted as closing attorney. The RTC contended it was to receive $63,999 in net sale proceeds from the Meredith transaction, but a dispute erupted between Robson and Failed Bank as to ownership of the funds. Robson asserted he was entitled to retain the net sale proceeds based on legal services performed for Failed Bank. On May 5, 1992, Robson deposited the net sale proceeds of $63.999 into Account No. 81941 at Failed Bank, but ten days later he transferred the same amount into Account No. 82568.

In a letter dated October 8, 1992, an attorney for the RTC wrote Defendant Mendelsohn, as Trustee, explaining the RTC's position as to its entitlement to a set-off of the funds in Account No. 82568 for Robson's debt allegedly owed to it. Mendelsohn contacted the RTC attorney by telephone and stated he could not relinquish the funds without a court order.

---

**2.** The Rautons had a prior mortgage on their residence of $100,000 with Failed Bank, and the Sigwalds had a prior mortgage on their residence of $92,500 with Diamond Mortgage Corporation. The Sigwalds' mortgage was ultimately assigned to Federal Home Loan Mortgage Corporation.

On August 12, 1993, Plaintiff filed the instant action seeking injunctive and declaratory relief establishing its entitlement to all funds in Account No. 82586. Unknown to Plaintiff, and without prior warning or notice to the Supreme Court of South Carolina or Defendant Mendelsohn, the RTC, on January 7, 1993, seized the funds and applied the entire balance in Account No. 82586, together with interest which had accrued thereon, to satisfy a debt receivable account established by Failed Bank when Robson had refused to pay over the net sale proceeds from the Meredith transaction. The RTC placed the funds in the general operating account of the RTC and at oral argument counsel for the RTC admitted that such funds have been fully expended. When Plaintiff learned of the RTC's seizure, it amended its complaint to add a claim for injunctive relief ordering the RTC to restore the funds.

## II. PROCEDURAL HISTORY

Plaintiff's Second Amended Complaint, filed December 14, 1993, alleges that the RTC illegally seized the funds in Account No. 82568, because its seizure violated the Supreme Court order as well as banking regulations and equitable principles with regard to set-off in a lawyer's trust account. Plaintiff contends that the RTC is incorrect in asserting that the funds in Account No. 82568 represented proceeds of the Meredith property transaction handled by Robson; rather, Plaintiff alleges that the balance represented the converted funds resulting from the refinancing transactions involving the Rautons and Sigwalds and that Plaintiff can prove such connection through tracing principles. As owner of the unsatisfied prior mortgages, Plaintiff contends it is entitled to such traced funds and will apply, *pro tanto*, any recovery in this case to the balances owed by the homeowners. The complaint seeks preliminary and permanent injunctive relief, as well as a declaratory judgment establishing the rights of the various contenders to the funds.

Defendant Robson answered the complaint, admitting his improper conversion of the funds from the refinancings, and entered cross-claims against RTC asking the court to order that the monies be paid to the Trustee or into the registry of the court, and to declare the various interests. Defendant Mendelsohn answered, and asserted that as court-appointed Trustee, he was in great doubt as to which party is entitled to receive the funds and asked the court to declare the rights of the parties. Mendelsohn entered cross-claims against the RTC and other defendants for injunctive, declaratory, and interpleader relief. Mendelsohn asked the court to order the RTC to restore all funds removed from Account No. 82568.

Defendant RTC has not answered, but has filed the instant motions to dismiss the principal claims of Plaintiff as well as the cross-claims.

## III. RTC'S MOTION TO DISMISS PLAINTIFF'S AND MENDELSOHN'S CLAIMS

■ The RTC contends that Plaintiff's complaint and Mendelsohn's cross-claim must be dismissed because both parties have failed to follow the prescribed procedure in advancing a claim against the RTC. The RTC contends the present matter is governed by the Financial Institution Recovery, Reform and Enforcement Act of 1989 ("FIRREA"), which provides an exclusive administrative claim procedure to be followed by a creditor of a failed bank as a condition precedent to instituting any judicial action. The RTC contends that the governing procedure is set forth in 12 U.S.C. § 1821(d)(5)(A)(i) (within 180 days of a claim being filed with RTC as receiver, it shall allow or disallow such claim). The RTC argues that the parties have failed to exhaust this administrative procedure and thus they may not seek judicial review of the RTC's action at this time. Moreover, RTC contends it had no obligation to provide direct mail notice to those parties of the obligation to file a claim within a certain statutory period.

Plaintiff, joined by Mendelsohn for purposes of the motions to dismiss, responds that the FIRREA administrative claims procedure cited by RTC is inapplicable here. Rather, Plaintiff contends, it is a procedure designed to handle the claims of true creditors of the RTC, such as suppliers of office

products and equipment, janitorial services, etc ... In addition, Plaintiff contends that a different FIRREA procedure, set forth in 12 U.S.C. § 1821(f), governs the disposition of claims and disputes over insured deposits. Plaintiff asserts that Account No. 82568 meets the statutory requirements for an insured deposit, as defined by 12 U.S.C. § 1813(*l*), and is not subject to RTC set-off. Finally, Plaintiff points out that because the RTC has failed to enact regulations governing the procedures to be followed in the handling of disputes concerning insured deposits, the provisions of 12 U.S.C. § 1821(f)(3) apply, which direct that a court of competent jurisdiction may make the final determination of such disputed claim. Plaintiff urges, therefore, that it has followed the correct procedure.

▇▇▇▇ At the outset, the court addresses the proper standard in resolving the RTC's motions to dismiss pursuant to Rule 12(b)(1). At the April 29 hearing, counsel for the RTC conceded that its motions were facial attacks on the sufficiency of the complaints and cross-claims. As such, RTC contends that the complaint and cross-claims simply fail to allege facts upon which subject matter jurisdiction can be based. In such a challenge all the facts alleged in the complaint and cross-claims are assumed to be true and the plaintiff and cross-claim defendant are afforded the same procedural protection available under a Rule 12(b)(6) motion. *Adams v. Bain*, 697 F.2d 1213 (4th Cir.1982). The burden of proving subject matter jurisdiction is on the party asserting jurisdiction, and the trial court may consider evidence by affidavit, deposition or live testimony without converting the proceeding to one for summary judgment. *See Mims v. Kemp*, 516 F.2d 21 (4th Cir.1975).

Applying the foregoing standards to the complaint and cross-claim, the court is constrained to conclude that the pleadings assert claims upon which federal district court jurisdiction may be based. FIRREA provisions concerning the payments of insured deposits, as set forth in 12 U.S.C. § 1821(f)(1) and (2) apply, as follows:

> In case of the liquidation of, or other closing or winding up of the affairs of, any insured depository institution, payment of the insured deposits in such institutions shall be made by the Corporation as soon as possible, ... either by cash or by making available to each depositor a transferred deposit in a new insured depository institution in the same community, ...

> .    .    .    .    .

> The Corporation, in its discretion, may require proof of claims to be filed and may approve or reject such claims for insured deposits.

The account in question was transferred to the newly chartered band and not until five months later were the funds from this account seized by the RTC. Thus, the RTC actually honored this account by transferring the balance to the newly chartered bank, and by making these funds available for a five month period for withdrawal by the depositor.

Another provision, 12 U.S.C. § 1813(*l*), defines deposit as follows:

> the unpaid balance of money or its equivalent received or held by a bank or savings association in the usual course of business and for which it has given or is obligated to give credit, either conditionally or unconditionally, to a commercial, checking, savings, time or thrift account, or which is evidenced by its certificate of deposit.

Plaintiff's complaint and the cross-claims allege that the subject Account No. 82568 is an interest-bearing savings account, operated as a lawyer's trust account. The account is one for which the RTC is obligated to give credit within the meaning of 12 U.S.C. § 1813(*l*). Although 12 U.S.C. § 1821(f)(3) provides that disputes concerning insured deposits are to be resolved in accordance with RTC regulations, where, as here stipulated, the RTC has failed to promulgate regulations, the adjudication of such claims shall be as follows:

> If the Corporation has not prescribed regulations establishing procedures for resolving disputed claims, the Corporation may require the final determination of a court of competent jurisdiction before paying such claims.

*Id.* § 1821(f)(3)(B). The complaint and cross-claim assert claims that come within the ambit of the preceding sections.

The court has carefully reviewed the provisions and authorities cited by the RTC and rejects its contention that provisions concerning disallowance of creditors' claims apply to this case. First, Plaintiff in this case is distinguishable from the general creditors of failed thrifts claiming rights in the liquidated assets of a failed institution. Rather, Plaintiff may have an interest in the funds based on tracing principles applied to the diverted funds. Mendelsohn, as Trustee, stands in the shoes of the insured depositor, Robson. In contrast to its position as a disinterested Conservator in those cases cited by the RTC, here the RTC is yet another competing stakeholder for an interest in the disputed funds. Moreover, the undisputed facts show that the RTC unilaterally chose to resolve that dispute in its own favor, over the protest of the court-appointed Trustee and in contravention of an order of the Supreme Court of South Carolina.

■ The RTC's argument that Plaintiff should be regarded as a creditor is also inconsistent with its admission in its briefs that neither Plaintiff nor Mendelsohn were reflected as creditors on the books of Failed Bank. The RTC thus argues that direct notice through mail was not required for those parties because neither party was a listed creditor. The RTC will not now be heard to advance such inherently inconsistent positions that (1) the parties are creditors of Failed Bank and therefore, the statutory provisions for claims of creditors apply and preclude the instant federal district court claims; and (2) on the other hand, because neither party is a true creditor reflected on the books of Failed Bank, the RTC was not obligated to furnish direct mailed notice to them of the obligation to submit a claim. Accordingly, because the court concludes that Plaintiff and Defendant's Mendelsohn's pleadings succeed in alleging a disputed claim within the jurisdiction of this court, pursuant to 12 U.S.C. § 1821(f)(3)(B), the court denies the RTC's motions to dismiss.

## IV. PLAINTIFF'S AND MENDELSOHN'S MOTION FOR PRELIMINARY INJUNCTION

The court concludes that before a preliminary injunction, pursuant to Rule 65(a), Fed. R.Civ.P., may issue, the record needs further development. Accordingly, counsel for all parties are to appear at a further hearing addressing the merits of the injunctive relief request. The parties may submit such evidence by affidavit, deposition, or live testimony. All such evidence, and any briefs to be submitted by counsel, shall be presented in accordance with the standards established in *Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co., Inc.,* 550 F.2d 189 (4th Cir.1977) (antitrust action arising from termination of furniture dealership in which court of appeals reversed district court's denial of preliminary injunction).

In *Blackwelder* the Fourth Circuit established that the correct standard for interlocutory injunctive relief is the balance of hardship test. The first step is to balance the irreparable harm to the plaintiff against the likelihood of harm to the defendant; if a decided imbalance of hardship should appear in plaintiff's favor, the importance of the likelihood of success on the merits is diminished and it will ordinarily be sufficient if plaintiff has raised a question on the merits so serious, substantial, difficult, and doubtful as to make it a fair ground for litigation. *Blackwelder* recognized that the four factors are intertwined.

Accordingly, the parties are ordered to file no later than August 16, 1994, any affidavits or other documentary evidence, as well as briefs, to be considered by the court in connection with the preliminary injunction matter. An evidentiary hearing will be held on August 22, 1994, following which the court will rule on the requests for preliminary injunctive relief.

## V. RTC'S MOTION TO ALTER OR AMEND JUDGMENT

As a result of the court's modification of its April 29 oral order in Part IV, *supra,* the RTC's motion is deemed moot.

THE CLERK OF COURT IS ORDERED TO SEND NOTICES OF THE AUGUST 22, 1994 HEARING TO ALL INTERESTED PARTIES, IN ACCORDANCE WITH THIS ORDER, AND TO STATE ON THE NOTICE THAT ALL BRIEFS AND WRITTEN EVIDENCE SHALL BE FILED NO LATER THAN AUGUST 16, 1994.

IT IS SO ORDERED.