**DEBARTOLO PROPERTIES MANAGEMENT, INC., et al., Appellants,**

v.

**Deborah Hunt DEVAN, Interim Trustee, et al., Appellees.**

**No. JFM 96–709.**

United States District Court, D. Maryland.

March 28, 1996.

Roger L. Frankel and Richard H. Wyron, Swidler & Berlin, Washington, DC, for debtors.

Joel I. Sher, Shapiro and Olander, Baltimore, MD, for Deborah H. Devan, Trustee, Neuberger, Quinn, Gielen, Rubin & Gibber.

Karen H. Moore, Assistant U.S. Trustee, Office of the U.S. Trustee, Baltimore, MD, for Office of the U.S. Trustee.

Joyce A. Kuhns and Shoshana Katz, Weinberg and Green, Baltimore, MD, for DeBartolo Properties Management, Inc., Westland Properties, Inc., Crown American Corporation and affiliates, CBL & Associates, Garden State Plaza, LP, South Shore Mall, LP, Westland Shopping Center, LP, New England Development, Inc. and affiliates, S.R. Weiner & Associates and affiliates, Wilder Management Associates, Inc. and Northline Joint Venture.

Douglas B. Rosner, Goulston & Storrs, Boston, MA, for New England Development, Inc. and affiliates, S.R. Weiner & Associates and affiliates, Wilder Management Associates, Inc. and Northline Joint Venture.

Kevin M. Newman, Joseph N. Bulko, Menter Rudin & Trivelpiece, Syracuse, NY, and Richard S. Hoffman, Williams & Connolly, Washington, DC, for Pyramid Crossgates Company, Pyramid Company of Buffalo, Carousel Center Company, LP, PCM Development Company, Pyramid Company of Glens Falls, Pyramid Company of Ithaca, Senpike Mall Company and Affiliated Pyramid Landlords.

Stephen A. Bogorad, Holland & Knight, Washington, DC, for the Equitable Life Assurance Society of the United States and related entities, State of California Public Retirement Systems, Bel Air Mobile Joint Venture, EQK Green Acres, LP, EQK Realty Investors I, Strategic Retail Trust, MILL-MAK Associates Joint Venture, LP, Day Jay Associates, Pen Nom IV Corp., Tallahassee Mall Associates Ltd. and Willow Grove Associates.

Thomas J. Leanse, Karen Muchin Zavis & Weitzman, Los Angeles, CA, for Urban Re-

tail Properties Co., the MaceRich Company, the Hahn Company, Forest City Enterprises Inc., Donahue Schriber and the Prudential Insurance Companies of America.

David L. Pollack, Pollack Meyers & Rosenblum, Philadelphia, PA, for the Rouse Company Affiliates, Kravco Company, General. Growth Management, Hines Interest, LP and New Plan Realty Trust.

Ronald M. Tucker, Melvin Simon & Associates, Indianapolis, IN, for Simon Property Group LP, Forum Developers LP, Hurst Mall Company LP, Knickerbocker Properties Inc., Mall of America Company, N.C. Community Center Assoc., Penn Ross Joint Venture and Smithaven Center Assoc. LLC.

Linda S. Broyhill, Akin, Gump, Strauss, Hauer & Feld, Washington, DC, for Center-Mark Properties, Inc. and Corporate Property Investors.

Mitchell B. Weitzman, Deso Thomas Spevack Weitzman & Rost, Washington, DC, for Washington Outlet Mall LP, Franklin Mills Associates LP, Kenwood Plaza LP, Gurnee Mills LP and Sunrise Mills LP.

Faye B. Feinstein, Altheimer & Gray, Chicago, IL, and Gerard Vetter, Goldman & Vetter, Baltimore, MD, for Arden Fair Associates LP, Heitman Properties of New Mexico Ltd., BVC Corp., HCS Group Trust, Hamburg Associates LP, North Riverside LP, Towne Mall Partners, UM Partners, University Square Partners and YGL Partners.

Lewis Goodman and Thomas Catliota, Shaw Pittman Potts & Trowbridge, Washington, DC, for Certain Former and Current Employees.

## MEMORANDUM OPINION

SMALKIN, District Judge.

This is an appeal from two separate orders of the United States Bankruptcy Court for the District of Maryland (Derby, J.), entered in the consolidated bankruptcy proceedings of Merry–Go–Round Enterprises, Inc., a major retail clothing chain with stores in malls throughout the country. The appellants are landlords of Merry–Go–Round and related stores. They appeal from the Bankruptcy Court's March 1, 1996, Order Extending the Time for the Debtors to Assume or Reject Remaining Leases of Nonresidential Real Property, arguing that the Bankruptcy Court lacked jurisdiction to enter the order. They. also appeal from the Bankruptcy Court's March 4, 1996, Order Granting the Interim Trustee's *ex parte* Motion for Authority to Dishonor Checks. The checks in question here were rent checks.

### I. Factual Background

On January 11, 1994, Merry–Go–Round Enterprises, Inc., and several related companies filed petitions for bankruptcy protection under Chapter 11 of the Bankruptcy Code. The related cases have been jointly administered. During the subsequent two years, the debtors filed successive motions for extensions of time to assume or reject their store leases under section 365 of the Bankruptcy Code. The Bankruptcy Court granted the debtors' motions with respect to the leases at issue in this appeal. On June 15, 1995, the Bankruptcy Court entered an Order extending the debtors' time to assume or reject their leases until January 31, 1996.

On January 29, 1996, the debtors filed another motion for an extension of time to assume or reject leases, seeking to extend their time from January 31, 1996, until April 30, 1996. The landlords opposed the motion. On March 1, 1996, after a hearing, the Bankruptcy Court entered an order converting the case to Chapter 7. The Court also entered an order providing that "the time to assume or reject the Leases shall be, and the same hereby is, extended to and including March 15, 1996." The Bankruptcy Court clearly intended that the Chapter 7 Trustee should have the opportunity to decide whether or not to assume or reject the unexpired leases.

On March 3, 1996, a Sunday, the newly-appointed Chapter 7 interim trustee sought an order from the Bankruptcy Court authorizing her to dishonor the debtors' checks which had not yet cleared. Those checks included the appellants' February rent checks. The Bankruptcy Court granted the interim trustee's *ex parte* order, which was entered on March 4, 1996.

On March 7, 1996, the appellants filed in this Court notices of appeal from the March

order granting the further extension of time to assume or reject leases and from the March 3 stop payment order. The next day, they filed "Emergency Motions for Expedited Action" and for consolidation of the appeals. The interim trustee moved to dismiss the appeals, arguing that they were interlocutory or moot. After a hearing before the undersigned on March 14, 1996, this Court entered an order granting the appellants leave to appeal from both orders. An expedited briefing schedule was set in open court.

Pursuant to the expedited briefing schedule, this Court received the appellants' brief on March 21, 1996. On March 25, 1996 the Court received a letter from counsel for the Chapter 7 interim trustee. The letter stated that the trustee had decided to seek an order from the Bankruptcy Court authorizing the sale of all of the remaining leases. On March 27, 1996, this Court received the appellees' brief on the merits.

Having read and considered the briefs, this Court deems that "the facts and legal arguments are adequately presented [therein] . . . and the decisional process would not be significantly aided by oral argument." Bankruptcy Rule 8012. The material facts are undisputed. The dispositive issues of law, which are not complex, were ably briefed by the parties. Lastly, the parties presented limited legal arguments on the merits to this Court during the March 14th hearing on the appellees' motion to dismiss the appeals. See Transcript of March 14, 1996 Hearing at 8–14, 18–23 (§ 365(d)(4) issue); 29–42 (stop payment issue). This Court, in the interest of prompt disposition of this appeal, has therefore exercised its discretion under Rule 8012 to dispense with oral argument. See generally Matter of Thirtyacre, 36 F.3d 697, 701 (7th Cir.1994).

## II. Waiver

█ The interim trustee argues that "[t]he appellants' abject failure to raise below the procedural question of whether the bank-

ruptcy court had authority to grant a § 365(d)(4) extension after expiration of the prior extension constitutes a waiver of any right to appeal this issue." (Appellees' Brief at 13.)[1] In the trustee's view, the appellants "mischaracterize this issue" by describing as "jurisdictional" the question of the bankruptcy court's authority to issue a further extension under the circumstances. (Id. at 14.)

This Court agrees with the interim trustee that the question presented under § 365(d)(4) is not "jurisdictional" within the meaning of the general rule that subject-matter jurisdictional issues cannot be waived. The issue here goes not to the subject matter jurisdiction of the bankruptcy court, but rather to its statutory authority to enter the order extending the debtors' time to assume or reject their leases. Decisions under § 365(d)(4) that describe bankruptcy courts as "lacking jurisdiction" to enter untimely orders ought not, therefore, to be taken as dispositive with respect to the issue of waiver.

█ Nevertheless, this Court may, in its discretion, decide issues presented to it in a bankruptcy appeal even though the issues were not raised in the court below. See, e.g., Levy v. Kindred, 854 F.2d 682, 685 (4th Cir.1988); Stewart v. Hall, 770 F.2d 1267, 1271 (4th Cir.1985); c.f. Matter of Newman, 903 F.2d 1150, 1151 n. 1 (7th Cir.1990) (declining to resolve "highly fact-based dispute" improperly raised on appeal). This Court will exercise that discretion to decide whether the Bankruptcy Court had statutory authority under § 365(d)(4) to enter its March 1, 1996 order extending the debtors' time to assume or reject their leases. The issue is purely legal, the relevant factual record is fully developed, and there is a risk that declining to reach the argument would result in a miscarriage of justice. See generally In re 604 Columbus Avenue Realty Trust, 968 F.2d 1332, 1343 (1st Cir.1992) (setting forth criteria for reviewing issues not presented to the court below).

---

1. Although the interim trustee now argues that the appellants have waived their right to appeal, she did not do so at the hearing held before this Court on March 14, 1996 for the express purpose of deciding whether or not this Court should entertain the appeal on this issue. Neither did the interim trustee raise the issue in her subsequent motion to strike issues from the appellants' brief.

### III.   11 U.S.C. § 365(d)(4)

■ Section 365 of the Bankruptcy Code (11 U.S.C. § 365 (1993)) governs the disposition in bankruptcy of executory contracts and unexpired leases. The parties agree that the statutory provision applicable to the present case is § 365(d)(4), which provides in pertinent part as follows:

> "[I]n a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor."

It is undisputed that the Bankruptcy Court's June 15, 1995, Order gave the debtors until January 31, 1996, to assume or reject the leases. It is also undisputed that, on January 29, 1996, the debtors filed a motion to further extend their time. The Bankruptcy Court did not act on that motion until it issued its March 1, 1996, order purporting to extend the time to assume or reject leases through March 15, 1996.[2]

The appellants argue that the Bankruptcy Court lacked jurisdiction to enter the March 1 order. According to the appellants, the leases were deemed rejected by the operation of § 365(d)(4), because the Bankruptcy Court failed to grant the debtors' extension request within the period of the prior extension. In response, the interim trustee argues, on the basis of cases interpreting § 365(d)(4), that the filing of the motion for an extension of time within the period for assumption or rejection was sufficient to preclude the rejection of the leases by operation of law.

The appellants appear to have conceded a threshold issue, namely that § 365(d)(4) permits a bankruptcy court to grant more than one extension of time to assume or reject leases. The period sought to be extended in the present case was a subsequent (fifth) extension, which lasted from June 15, 1995, until January 31, 1996. As this Court stated at the hearing on the motions to dismiss the appeals, § 365(d)(4) on its face appears to authorize only one extension beyond the initial 60-day period. *See* Hearing Transcript at 11. Counsel for the interim trustee assured the Court that successive extensions are "what we've always done as a matter of practice," and the appellants did not argue that the several extensions granted by the Bankruptcy Court were improper under § 365(d)(4). The weight of authority appears to favor the interim trustee's position. *See, e.g., In re Channel Home Centers, Inc.,* 989 F.2d 682 (3d Cir.), *cert. denied* —— U.S. ——, 114 S.Ct. 184, 126 L.Ed.2d 143 (1993), and cases cited therein (permitting a second extension even though "a strictly literal parsing of the words of" § 365(d)(4) would prohibit it).

It is not at all clear to this Court that § 364(d)(4) does, in fact, permit successive extensions of the time to assume or reject leases. The statute's acknowledged purpose is to "prevent trustees from taking too much time in deciding whether to assume unexpired nonresidential leases," and the plain language of the subsection explicitly contemplates only one extension. *Channel Home Centers,* 989 F.2d at 686. The numerous successive lease extensions sought by the trustees in the present case, which have allowed the debtors to defer making a decision on the leases for a period of over *two years,* demonstrate the difficulties with the courts' interpretation of § 365(d)(4) in this regard. Nevertheless, this issue has not been presented in this appeal and this Court will therefore adopt the parties' position that § 365(d)(4) permits repeated extensions of the time to reject or assume leases.

If § 365(d)(4) is interpreted to authorize repeated extensions, then the procedural protections explicitly granted to landlords with

---

**2.** In light of the additional sixty day period for decision that the parties agree would arise, by operation of law, on the date of conversion to Chapter 7, the apparent purpose of the Bankruptcy Court's order extending time was to retroactively plug the gap between the expiration of the fifth extension on January 1st and the March 1st conversion. The order was not entered *nunc pro tunc.*

respect to the first extension must apply equally to subsequent extensions. Specifically, this Court will interpret the statute, as do the parties, as follows: a lease is deemed rejected by operation of law under § 365(d)(4) if it is not assumed "within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period [or within the period of a subsequent extension], fixes."

■ The statutory language is clear and unambiguous. It provides that the bankruptcy court must fix an additional period of time for the assumption or rejection of leases within the period previously set for assumption or rejection. There is no support in the text of § 365(d)(4) for the interim trustee's position that the mere filing of a motion for an extension of time within an existing election period is sufficient to extend the time for decision. Rather, the statute expressly permits only those extensions that "the court . . . fixes" within the applicable time period.

Indeed, the interim trustee does not argue that the statute itself provides the basis for her litigation position. Rather, the trustee contends that "[a] court should look beyond the literal wording of a statute . . . where a literal reading would produce an unfair or arbitrary result." (Appellees' Brief at 15.) In addition, the trustee relies heavily upon the opinion of Judge Reinhardt, writing for a divided panel of the Ninth Circuit in *In re Southwest Aircraft Services, Inc.*, 831 F.2d 848, 853 (9th Cir.1987), *cert. denied* 487 U.S. 1206, 108 S.Ct. 2848, 101 L.Ed.2d 885 (1988), which interpreted § 365(d)(4) as providing that "if cause for an extension arises within the sixty day period and a motion for an extension is made within that period, a bankruptcy court may, even after the sixty day period has expired . . . grant the requested extension."[3] For the following reasons, this Court finds the *Southwest Aircraft* opinion unsound and entirely unpersuasive.

In *Southwest Aircraft*, Judge Reinhardt detected in the language of § 365(d)(4) an ambiguity that would permit the court to add an interpretive gloss to the plain language of the statute. The *Southwest Aircraft* opinion itself concedes, however, that its interpretation of the statute is strained, driven by the court's desire to reach what it perceives to be a "reasonable" result:

> "While we recognize that were we to look only to the face of the statute [the landlord's] argument would be by far the stronger one, we cannot say with certainty that it is the only plausible interpretation of § 365(d)(4). There is another possible interpretation of the statutory language, one that permits a more reasonable construction—a construction that is more consistent with the normal concepts that govern the functioning of the judiciary."

*Southwest Aircraft*, 831 F.2d at 850. The court's determination to reach its desired result, regardless of the statutory language, is underscored by its further declaration that

> "[e]ven were the language of the section unambiguous, because the result urged by [the landlord] appears so arbitrary and unfair we would . . . examine the legislative purpose and history in order to make certain there was no clear indication of a contrary congressional intent."

*Southwest Aircraft*, 831 F.2d at 850, n. 2.

■ In *this* circuit, "courts should venture beyond the plain meaning of a statute only in those rare instances in which there is a clearly expressed legislative intent to the contrary." *In re Maxway Corp.*, 27 F.3d 980, 982 (4th Cir.), *cert. denied* —— U.S. ——, 115 S.Ct. 580, 130 L.Ed.2d 495 (1994). This is not such an instance. Rather, the legislative history of § 365(d)(4) indicates that Congress meant exactly what it said what it drafted the statute:

> "The first problem which this bill would remedy is the long-term vacancy or partial operation of space by a bankrupt tenant. Although in a Chapter 7 case the bankruptcy code presently requires that the trustee decide whether to assume or reject

---

3. No other federal circuit has yet decided this specific issue under § 365(d)(4). *But see In re Channel Home Centers, Inc.*, 989 F.2d 682, 686 (3d Cir.), *cert. denied* —— U.S. ——, 114 S.Ct. 184, 126 L.Ed.2d 143 (1993) (holding that § 365(d)(4) permits successive extensions, but expressing the opinion that *Southwest Aircraft*'s reading of the statute is "inconsistent with accepted usage.").

an unexpired lease within 60 days after the bankruptcy petition is filed, there is no deadline for this decision in a Chapter 11 case. Because of the unprecedented number of bankruptcy cases and the consequent delays in the bankruptcy courts, tenant space has been vacated for extended periods of time before the bankruptcy court forced the trustee to decide whether to assume or reject the lease. During this time, the other tenants of the shopping center are hurt because of reduced customer traffic in the shopping center … The bill would lessen the problems caused by extended vacancies and partial operation of tenant space by requiring that the trustee decide whether to assume or reject a nonresidential real property lease within sixty days after the order for relief in a case under any chapter. The time period could be extended by the court for cause, such as in exceptional cases involving a large number of leases.... If the lease is not assumed or rejected within this sixty day period, or any additional period granted by the court, the lease is deemed rejected and the trustee must immediately surrender the property to the lessor."

130 Cong.Rec. S8894–95 (daily ed. June 29, 1984) (remarks of Senator Hatch). The policy behind § 365(d)(4), therefore, is to force debtors to make early decisions about unexpired leases, and to permit extensions of the sixty day election period only with the permission of the bankruptcy court. The plain statutory language, requiring the bankruptcy court to act within the existing election period, furthers that policy.

The interim trustee points out that since the Ninth Circuit decided *Southwest Aircraft*, a majority of other courts has interpreted § 365(d)(4) to permit extensions when a *motion for* extension is filed within the assumption/rejection period.[4] Irrespective of these cases, which are not binding on this Court, this judge can neither subscribe to Judge Reinhardt's result-oriented approach to statutory construction nor blindly follow the subsequent decisions, however numerous, that adopt it. The task of the judiciary is to interpret legislation, not to rewrite it. *See Crooks v. Harrelson*, 282 U.S. 55, 60, 51 S.Ct. 49, 50–51, 75 L.Ed. 156 (1930). When legislation is unambiguous ' "the sole function of the courts is to enforce [the statute] according to its terms." ' *Maxway Corp.*, 27 F.3d at 982 (quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)).[5] *See also United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). As earlier stated, there is no genuine ambiguity in § 365(d)(4)'s explicit statement that a lease is deemed rejected unless it is assumed within "such additional time as the court, for cause, within [the election] period, fixes." If, as the trustee suggests, the "superficial 'plain reading' analysis of the statute" leads to an unfair result, then the problem should be resolved by Congress and not by this Court. (Appellees' brief at 16.)[6]

Accordingly, this Court holds that the Bankruptcy Court acted outside its statutory authority when it entered its March 1, 1996, order purporting to extend through March 15, 1996, the interim trustee's time to assume or reject the appellants' leases. Consequently, the leases must be deemed rejected under § 365(d)(4) as of January 31, 1996, and the appellants are entitled to immediate possession of their property.

---

**4.** Other courts, however, have rejected the *Southwest Aircraft* interpretation of § 365(d)(4). The Court of Appeals for the Third Circuit has declared the Ninth Circuit's construction of the statute to be "unnatural, unclear, and unnecessary." *In re Channel Home Centers, Inc.*, 989 F.2d 682, 686 (3d Cir.1993).

**5.** The Court of Appeals for the Fourth Circuit acknowledged in *Maxway Corp.* that the statutory question before it was "difficult, and that legitimate policy arguments exist[ed] on both sides." 27 F.3d at 984. The Court then observed that

"the language of [the statute] is plain," and based its decision upon that unambiguous language.

**6.** In his dissenting opinion in *Southwest Aircraft*, Judge Anderson stated that, in his view, the inequities which would supposedly result from reading § 365(d)(4) according to its terms are more chimerical than real. 831 F.2d at 854–855. This Court is obliged to give the statute its plain meaning in any event, and therefore expresses no view on the policy issues which might be raised by this appeal.

### IV. The Stop Payment Order

██ The appellants also appeal from the Bankruptcy Court's March 4, 1996, order authorizing the interim trustee to dishonor checks, including the appellants' February rent checks. According to the appellants, the trustee was required to honor the checks because, under 11 U.S.C. § 365(d)(3), the appellants were owed timely rent payments. The appellants also argue that two orders of the Bankruptcy Court, the February 13, 1996, Second DIP Financing Order and the February 21, 1996, GOB Order, required the trustee to make timely rent payments. (Docket Numbers 4389 and 4429.) In response, the interim trustee argues that the conversion of the case from Chapter 11 to Chapter 7 subjects the appellants' rent claims, as "administrative expense claims," to the priority provisions of 11 U.S.C. § 726(b), and that the Bankruptcy Court therefore acted within its authority in allowing dishonor of the checks.

The statute relied on by the appellants, 11 U.S.C. § 365(d)(3), is inapplicable in light of this Court's disposition of the first appellate issue. Section § 365(d)(3) provides that "[t]he trustee shall timely perform all obligations of the debtor ... under any unexpired lease of nonresidential real property, *until such lease is assumed or rejected....*" (emphasis added). Because the leases must be deemed rejected as of January 31, 1996, § 365(d)(3)'s "timely performance" obligation cannot aid the appellants with respect to their claim to February rent. Furthermore, to the extent that the Second DIP Order and the GOB Order may have been issued by the Bankruptcy Court under the authority of § 365(d)(3), the statutory authority for those orders is in doubt. *See* Second DIP Financing Order, ¶ 11 ("The Debtors ... shall timely pay[ ] all unpaid obligations with respect to leases that are required to be paid pursuant to 11 U.S.C. § 365(d)(3) until such time as a lease has been rejected and such rejection becomes effective.")[7]

The parties have not fully briefed the issue of how the debtor's obligation to pay rent

should be treated for the time period after the rejection, by operation of § 365(d)(4), of the appellants' leases. Given this Court's decision on the § 365(d)(4) issues, which has altered the parties' relationship as it stood on March 4, and in light of the complexity of the legal issues and the possible need for further factual development, this Court will remand this issue to the Bankruptcy Court for reconsideration consistent with this opinion.

It is so ordered.

### ORDER

For the reasons set forth in the Memorandum Opinion of even date, IT IS, by the Court, this 28th day of March, 1996, ORDERED:

1. That the March 1, 1996, Order of the United States Bankruptcy Court for the District of Maryland Extending the Time for the Debtors to Assume or Reject Remaining Leases of Nonresidential Real Property BE, and it hereby IS, VACATED; and

2. That this case BE, and it hereby IS, REMANDED to the United States Bankruptcy Court for the District of Maryland for further proceedings consistent with this opinion.

---

7. Likewise, the appellants' procedural due process argument assumes that they had a right of which they could not be deprived without due process, namely the right to immediate payment of rent.