In re BEAUTYCO, INC., Debtor.

No. 03–07621–M.

United States Bankruptcy Court,
N.D. Oklahoma.

March 30, 2004.

Neal Tomlins, Ronald E. Goins, Tulsa, OK, for debtor.

Joseph A. Friedman, Robert J. Taylor, Dallas, TX, for Defendant.

## MEMORANDUM OPINION

TERRENCE L. MICHAEL, Chief Judge.

THIS MATTER comes before the Court pursuant to the Application for Order Extending the Time within which Debtor may Assume or Reject Unexpired Leases of Nonresidential Real Property and Notice of Opportunity for Hearing (the "Application") filed February 17, 2004, by Beautyco, Inc. ("Beautyco"), debtor herein, and Belle Isle Station Limited Partnership's Response and Objection to Application for Order Extending the Time within which the Debtor may Assume or Reject Unexpired Leases of Nonresidential Real Property (the "Objection") filed March 5, 2004, by Belle Isle Station Limited Partnership ("Belle Isle"), a lessor of Beautyco. An evidentiary hearing on the matter was held by the Court on March 23, 2004. Beautyco appeared by and through its attorney, Neal Tomlins. Belle Isle appeared by and through its attorney, Robert Taylor. The following findings of fact and conclusions of law are being made pursuant to Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52, which is made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 9014.

## Jurisdiction

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C.A. § 1334(b). Reference to the Court of this contested matter is proper pursuant to 28 U.S.C.A. § 157(a). This is a core proceeding as contemplated by 28 U.S.C.A. § 157(b)(2)(A) and (M).

## Findings of Fact

Beautyco is in the business of selling beauty supplies and conducts its operations through leased storefronts throughout Oklahoma and other states. In 1999, Beautyco and Belle Isle entered into a lease (the "Lease") pursuant to which Beautyco leased approximately 2,400 square feet of retail space in a shopping center located in Oklahoma City, Oklahoma (the "Shopping Center"). The space leased by Beautyco at the Oklahoma City location represents approximately one per cent (1%) of the total Shopping Center. According to Robert Glass, CEO of Beautyco, the storefront leases, including the Lease, are essential assets of the company.

On December 31, 2003, Beautyco filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. In its schedules, Beautyco has claimed an interest in 35 unexpired leases, 33 of which (including the Lease) secure the use of nonresidential real property for business purposes. Since filing for bankruptcy protection, Beautyco has remained current on its lease obligations, including the Lease. Mr. Glass testified that Beautyco, as part of its reorganization efforts, is currently reviewing the profitability of each of its locations. While the Lease has been profitable in the past, Mr. Glass testified that he did not currently know how prominently the Lease would figure into Beautyco's reorganization effort.

Beautyco filed the Application on February 17, 2004, 48 days after filing its Chapter 11 petition. Beautyco seeks an order granting it until July 31, 2004, or confirmation of a Chapter 11 plan, whichever is later, to make a decision regarding the

assumption or rejection of its leases. Notice of the Application was given to all creditors and parties in interest, including each of the lessors under the various leases. The Application was filed using the "Notice of Opportunity for Hearing" procedures outlined in the local rules of this Court.[1] On March 5, 2004, Belle Isle filed the Objection. Belle Isle argues that the Lease has been rejected by operation of law. Belle Isle also contends that Beautyco has failed to establish cause to extend the time in which to assume or reject the Lease. No other creditor or lessor has objected to the relief sought by Beautyco.

Eliot Barnett, CEO of the corporation that controls Belle Isle, testified that the delay in assuming or rejecting its lease with Beautyco will cause Belle Isle financial harm. On January 21, 2004, Belle Isle received a letter indicating that Beauty Brands, a beauty supplies retailer, desired to lease property in the Shopping Center.[2] Belle Isle, however, is prevented from entering into any agreement with Beauty Brands while Beautyco remains in its lease. Mr. Barnett testified that an exclusive rights provision in the Lease prohibits Belle Isle from leasing space to a beauty supplies competitor such as Beauty

---

1. Said rule provides that
   (c) *Notice of Opportunity for Hearing.*

   (1) Except for requests for relief specified in subdivision (e), if a motion or other request for relief is filed for which the Code does not require a hearing but permits an opportunity for a hearing as defined by section 102(1) of the Code, and a hearing is not requested by the movant, the movant shall include the following language in the title of the request for relief: "and Notice of Opportunity for Hearing," and the body of the motion shall contain the following statement:

   **NOTICE OF OPPORTUNITY FOR HEARING**

   **Your rights may be affected. You should read this document carefully and consult your attorney about your rights and the effect of this document.** If you do not want the Court to grant the requested relief, or you wish to have your views considered, you must file a written response or objection to the requested relief with the Clerk of the United States Bankruptcy Court for the Northern District of Oklahoma, 224 South Boulder, Tulsa, Oklahoma 74103 no later than * days from the date of filing of this request for relief. You should also mail a file-stamped copy of your response or objection to the undersigned movant/movant's attorney [and others who are required to be served] and file a certificate of service with the Court. If no response or objection is timely filed, the Court may grant the requested relief without a hearing or further notice. **The ____ day period in-**

   cludes the 3 days allowed for mailing provided for in **Rule 9006(f) Fed. R. Bankr.Proc.**

   ***The moving party shall insert the appropriate response time. If a response time to a request for relief is prescribed elsewhere by applicable statute, rule, or order, such response time shall be used. If a response time is not prescribed elsewhere, the response time shall be 15 days.**

   After expiration of the time for filing a response or objection, if no response or objection is timely filed and if the movant has complied with this Local Rule 9013(c)(1), the movant may file a request for entry of an order granting the requested relief, and the Court may grant the relief requested without further notice or a hearing. The request for entry of an order shall state the facts of service of the original request for relief and that no response or objection has been timely filed, or if untimely filed, stating the pertinent facts. A copy of the original request for relief shall be submitted with the request for entry of an order. A proposed order shall accompany, but not be attached to, the request for entry of an order.
   Bankr.N.D. Okla. LR 9013(c)(1).

2. According to Mr. Barnett, Belle Isle entered into negotiations with Beauty Brands in the fall of 2003, well before Beautyco filed its petition for bankruptcy relief and at a time when Beautyco was current in its obligations under the Lease.

Brands.[3] Mr. Barnett believes that if Beautyco is allowed to delay its assumption or rejection of the Lease, Beauty Brands may become impatient and take their business to another location. According to Mr. Barnett, Beauty Brands is financially sound. The proposed lease with Beauty Brands is for almost three times the area covered by the Lease. As a condition of entering into a lease with Belle Isle, Beauty Brands requires the same type of exclusivity provision currently found in the Lease. Therefore, Beauty Brands and Beautyco cannot peacefully coexist at the Shopping Center. According to Mr. Barnett, the lost opportunity to enter into a lease with Beauty Brands would impair the profit potential of Belle Isle.

### Conclusions of Law

■ Section 365(d)(4) states in relevant part: "if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60 day period, fixes, then such lease is deemed rejected[.]"[4] Beautyco filed the Application within the 60 day period; however, the Court has not yet ruled upon the same. The question is whether a court must fix the additional time to assume or reject a lease within 60 days of the filing of a debtor's petition for relief or see the debtor's rights to assume a lease lost forever.

■■ Courts, when interpreting provisions of the Bankruptcy Code, must first look to the plain language of the relevant statute; if the statute is clear on its face, "'the sole function of the courts is to enforce it according to its terms.'"[5] Courts should only consider alternative interpretations when the literal application of the statute would produce an absurd or unreasonable result,[6] or if the literal application of the statute is demonstrably at odds with the intentions of the statute's drafters.[7] Numerous courts, following these canons of statutory construction, have come to differing conclusions regarding the meaning of § 365(d)(4). A majority of courts have concluded that all that is required within the 60 day period is the filing of the motion to extend time, while a minority of courts have concluded that the plain language of the statute mandates that courts rule on such motions within the 60 day time frame regardless of the result.[8] The

---

**3.** The Lease does contain limited exceptions to the exclusivity provision for large retailers such as Wal–Mart, another retailer located in the Shopping Center.

**4.** 11 U.S.C.A. § 365(d)(4).

**5.** *United States v. Ron Pair Enter., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (quoting *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917)).

**6.** *See, e.g., Holy Trinity Church v. United States,* 143 U.S. 457, 460, 12 S.Ct. 511, 36 L.Ed. 226 (1892) ("If a literal construction of the words of a statute be absurd, the act must be so construed as to avoid the absurdity.") and *United States v. American Trucking Ass'n.,* 310 U.S. 534, 543, 60 S.Ct. 1059, 84 L.Ed.

1345 (1940) ("[E]ven when the plain meaning did not produce absurd results but merely an unreasonable one plainly at variance with the policy of the legislation as a whole this Court has followed that purpose, rather than the literal words." (citation and quotations omitted)).

**7.** *Ron Pair, supra,* 489 U.S. at 242, 109 S.Ct. 1026.

**8.** *Compare In re Southwest Aircraft Servs., Inc.,* 831 F.2d 848 (9th Cir.1987) (holding court does not have to rule on motion within 60 days of petition); *Matter of American Healthcare Management, Inc.,* 900 F.2d 827, 830 (5th Cir.1990) (same); *In re Channel Home Ctrs., Inc.,* 989 F.2d 682, 687–88 (3rd Cir.1993) (same); *In re Unit Portions of Del.,*

majority view is based upon the premise that "Congress could not have intended that a debtor would forfeit substantial rights merely because the court failed to act within the 60 day period."[9] The minority view is grounded in the belief that the statute is unambiguous, and that although the result may be harsh, to the extent redress is appropriate, it is a matter which must be left to Congress.[10]

After a careful review of both positions, the Court finds the majority position persuasive. Congress's intent in enacting § 365(d)(4) was " 'to protect lessors ... from delay and uncertainty by forcing a trustee or a debtor in possession to decide quickly whether to assume unexpired leases.' "[11] Requiring courts to rule on a motion for extensions of time in which to assume or reject nonresidential leases within 60 days after the debtor filed his or her petition does not further this policy. A debtor who has filed a motion within the allotted time frame has done all that is required to obtain an extension. A debtor has no control over a court's docket and cannot compel a court to review and act upon a motion. It would be unjust to allow essential property interests to rise of

fall based upon the action or inaction of a court within a specified period of time. The Court concludes that Beautyco's nonresidential leases, including the Lease, were not terminated by operation of law.

■ Even if the Court were somehow inclined to accept the position taken by Belle Isle, it would adopt such a rule on a prospective basis only. The issue raised by Belle Isle regarding § 365(d)(4) is a matter of first impression in this district. In the nearly seven years that this judge has been on the bench, the Court has held without exception that the filing of a motion tolls the time for further action. Local counsel who practice before this Court regularly have become familiar with and have come to rely upon the position of the Court on this issue. Under this practice, the filing of the Application would serve to toll the 60 day period set forth in § 365(d)(4), and provide Beautyco with a safe harbor while the Court pondered the Application. It would be patently unfair and inequitable for this Court to effectively change the rules of practice in mid-stream, punishing Beautyco and its counsel, and threatening to destroy Beautyco's prospects for reorganization in the process.[12]

---

*Inc.*, 53 B.R. 83 (Bankr.E.D.N.Y.1985) (same); *In re By–Rite Distrib., Inc.*, 55 B.R. 740 (D.Utah 1985) (same); *In re Garrett Rd. Supermarket, Inc.*, 95 B.R. 902 (E.D.Pa.1989) (same); *In re Advanced Elecs., Inc.*, 108 B.R. 53 (Bankr.M.D.Pa.1989) (same); *In re Southern Tech. College, Inc.*, 148 B.R. 550 (Bankr. E.D.Ark.1992) (same); *In re Travel 2000, Inc.*, 264 B.R. 451 (Bankr.W.D.Mich.2001) (same); *with Matter of Coastal Indus., Inc.*, 58 B.R. 48 (Bankr.D.N.J.1986) (holding court must rule on motion within 60 days of the petition); *In re Duckwall–ALCO Stores, Inc.*, 150 B.R. 965, 972 (D.Kan.1993) (same); *In re Horwitz*, 167 B.R. 237 (Bankr.W.D.Okla.1994) (same); *Debartolo Properties Management, Inc.*, 194 B.R. 46 (D.Md.1996) (same); *In re DCT, Inc.*, 283 B.R. 442 (Bankr.E.D.Mich.2002) (same).

9. *See, e.g., In re DCT, Inc., supra*, 283 B.R. at 444.

10. *See, e.g., In re Horwitz, supra*, 167 B.R. at 242.

11. *American Healthcare Management, supra*, 900 F.2d at 830 (quoting *Sea Harvest Corp. v. Riviera Land Co.*, 868 F.2d 1077, 1079 (9th Cir.1989)).

12. There is ample authority in this circuit for the application of a ruling on a prospective basis only. As our court of appeals has stated:

Three factors are relevant to the nonretroactive application of judicial decisions.
   "First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied ... or by deciding an issue of first impression whose resolution was not clearly foreshad-

The second issue that the Court must decide is whether Beautyco has established "cause" for an extension of time in which to assume or reject the Lease under § 365(d)(4). The term is not defined by the Bankruptcy Code and has been left to the interpretation of the courts.[13] In determining "cause" courts have traditionally weighed various factors.[14] These factors include: (i) whether the debtor is current on the lease obligation; (ii) whether the lease is a primary asset of the debtor; (iii) whether the debtor has failed to evaluate the lease and/or propose a plan of reorganization within a reasonable period of time; and (iv) whether the lessor will be damaged beyond compensation available under the Bankruptcy Code due to the debtor's continued occupation of the lease.[15]

Several factors in this case weigh in favor of extending the time in which to assume or reject the Lease. Beautyco is current on its obligations under the Lease. After filing for bankruptcy, Beautyco has timely paid Belle Isle's rent each month. The current cash collateral order contemplates that such payments will continue in the foreseeable future. In addition, the Lease is a significant asset of the Beautyco estate. Although Beautyco has not yet determined how prominently the Lease will figure into its reorganization effort, the store has been profitable in the past. As a result, the Court would be hard pressed to find that Beautyco would be unaffected if the lease was lost at this time; requiring Beautyco to immediately decide its course regarding the Lease would inhibit its chances for successful reorganization in the future. In addition, Beautyco has been in bankruptcy a little less than three months. Three months is not a reasonable amount of time to expect Beautyco to comprehensively evaluate the profitability of 33 nonresidential leases, while at the same time, performing all of the other duties required of a debtor in possession. As such, the Court cannot conclude that Beautyco has failed to timely evaluate which leases it wishes to reject and assume, including the Lease. Finally, Belle Isle will not suffer any harm not compensable under the Bankruptcy Code.

owed .... Second, it has been stressed that 'we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' ... Finally, we have weighed the inequity imposed by retroactive application, for '[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a holding of nonretroactivity.' " *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–07, 92 S.Ct. 349, 355–56, 30 L.Ed.2d 296 (1971) (citations omitted). This "approach has consistently been utilized where changes in statutes of limitations or other aspects of the timeliness of a claim are at issue." *Occhino v. United States*, 686 F.2d 1302, 1308 n. 7 (8th Cir.1982). *See also Fernandez v. Chardon*, 681 F.2d 42, 51–53 (1st Cir.1982), *aff'd on other grounds*, 462

U.S. 650, 103 S.Ct. 2611, 77 L.Ed.2d 74 (1983); *Singer v. Flying Tiger Line, Inc.*, 652 F.2d 1349, 1353 (9th Cir.1981); *Wachovia Bank & Trust Co. v. National Student Marketing Corp.*, 650 F.2d 342, 346–48 (D.C.Cir. 1980), *cert. denied*, 452 U.S. 954, 101 S.Ct. 3098, 69 L.Ed.2d 965 (1981). *Jackson v. City of Bloomfield*, 731 F.2d 652, 654 (10th Cir.1984). The Court believes that all of the factors mentioned in *Jackson* would support prospective application of the result urged by Belle Isle (and rejected) in this case.

**13.** *In re Service Merchandise, Co., Inc.*, 256 B.R. 744, 748 (Bankr.M.D.Tenn.2000).

**14.** *Id.*

**15.** *See, e.g., South Street Seaport Limited Partnership v. Burger Boys, Inc. (In re Burger Boys, Inc.)*, 94 F.3d 755, 761 (2nd Cir.1996) (leading case); *Service Merchandise, supra*, 256 B.R. at 748.

■ Belle Isle argues that it will potentially lose the more profitable Beauty Brands lease if Beautyco is allowed an extension in which to assume or reject the Lease. The argument is not well taken. Bankruptcy courts "should try to implement, rather than alter, non-bankruptcy entitlements." [16] As the United States Supreme Court has observed:

Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving a windfall merely by reason of the happenstance of bankruptcy.[17]

Under the Lease, Beautyco must pay monthly rent for a location in the Shopping Center; in return, Belle Isle must not lease any space in the Shopping Center to potential competitors of Beautyco. To date, both parties are receiving the benefit of their bargain. There is nothing in the Bankruptcy Code that would allow the Court to rewrite the lease. If Beautyco had not sought bankruptcy protection, Belle Isle would have no right to lease any part of the Shopping Center to Beauty Brands. Belle Isle should not be allowed to use Beautyco's bankruptcy as a sword to alter the bargain and receive a windfall. The harm identified by Belle Isle is illusory and has no bearing on whether to extend the deadline for Beautyco to decide whether to assume or reject the Lease.

■ The Court will limit the relief sought in the Application as to Belle Isle in one regard. The Court can understand Belle Isle's concern with the amount of time sought by Beautyco to ponder assumption or rejection of the Lease. At this juncture, the Court will grant Beautyco until July 31, 2004, to assume or reject the Lease. This deadline is entered without prejudice to the seeking of further extensions of time by Beautyco, and the Court expressly reserves the right to consider such further extensions. As to all other lessors, the Application is deemed unopposed and granted without modification.[18]

## Conclusion

The Application is granted in accordance with the conditions outlined above. A separate judgment in accordance with this Memorandum Opinion is entered concurrently herewith.

## JUDGMENT

THIS MATTER comes before the Court pursuant to the Application for Order Extending the Time within which Debtor may Assume or Reject Unexpired Leases of Nonresidential Real Property and Notice of Opportunity for Hearing filed February 17, 2004, by Beautyco, Inc., debtor herein, and Belle Isle Station Limited Partner-

16. *Matter of Central Ice Cream Co.*, 836 F.2d 1068, 1072 (7th Cir.1987) (Easterbrook, J.); *see also In re Columbia Gas System Inc.*, 50 F.3d 233, 238 (3rd Cir.1995) ("[A]pplication of the Bankruptcy Code does not change the attributes of a given legal relationship.")

17. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) (citation and quotations omitted).

18. *See In re Prince*, 236 B.R. 746, 750 (Bankr. N.D.Okla.1999) ("[I]t is absolutely incumbent upon a creditor to take an active role in protecting its interests, and a creditor which fails to do so is in a poor position to later complain about an adverse result.") (quoting *Andersen v. UNIPAC–NEBHELP*, 179 F.3d 1253, 1257 (10th Cir.1999) (citation omitted)).

ship's Response and Objection to Application for Order Extending the Time within which the Debtor may Assume or Reject Unexpired Leases of Nonresidential Real Property filed March 5, 2004, by Belle Isle Station Limited Partnership, a lessor of Beautyco. The issues having been duly considered and a decision having been duly rendered, for the reasons set forth in the Memorandum Opinion filed concurrently herewith,

IT IS HEREBY ORDERED that the Application for Order Extending the Time within which Debtor may Assume or Reject Unexpired Leases of Nonresidential Real Property and Notice of Opportunity for Hearing filed February 17, 2004, by Beautyco, Inc., debtor herein, be, and the same hereby is, granted in part.

IT IS FURTHER ORDERED that Beautyco, Inc., debtor herein, shall have until July 31, 2004, in which to assume or reject its nonresidential lease of real property identified in Schedule G of its schedules as 1710 Belle Isle Blvd., Suite G, located in Oklahoma City, Oklahoma and referred to in the Memorandum Opinion as the "Lease." This deadline is entered without prejudice to the seeking of further extensions of time by Beautyco, Inc., and the Court expressly reserves the right to consider such further extensions.

IT IS FURTHER ORDERED that Beautyco, Inc., debtor herein, shall have until the later of July 31, 2004, or the date of a confirmed plan of reorganization, in which to assume or reject all other nonresidential leases of real property identified in Schedule G of its schedules. This deadline is entered without prejudice to the seeking of further extensions of time by Beautyco, Inc., and the Court expressly reserves the right to consider such further extensions.