**In re Roy Andrew BANE, Debtor.**

**Affordable Efficiencies, Inc., and Lance A. Copperman, Movants,**

**v.**

**Roy Andrew Bane and George I. Vogel, Trustee, Respondents.**

**Bankruptcy No. 7–97–00067.**

United States Bankruptcy Court,
W.D. Virginia,
Roanoke Division.

June 1, 1998.

---

Gary M. Bowman, Roanoke, VA, for Debtor.

William W. Terry, III, Roanoke, VA, for Movants.

## DECISION AND ORDER

ROSS W. KRUMM, Chief Judge.

On April 7, 1998, a hearing was held on the motion of Movants for relief from the automatic stay. In attendance were Gary M. Bowman, Esquire, counsel for Debtor, and William W. Terry, III, Esquire, counsel for Movants. Movants request relief from the automatic stay with respect to equipment securing repayment of a note and with respect to an assertedly rejected lease for non-residential real property.[1] At the hearing, before any evidence was presented, Movants made an oral motion. Movants move for judgment on the pleadings due to Debtor's failure to deny specific allegations with respect to the equipment in the motion, thereby admitting same. Movants also move for judgment on the pleadings with respect to the lease because it was rejected in Debtor's previous chapter 7 case. A ruling in favor of Movants on the oral motion disposes of Movants' motion for relief without further hearing.[2] Debtor opposes the motion. The Court invited the parties to submit memoranda in support of their positions. The Court has considered the motions, the responses, and the memoranda. Movants' oral motion is ripe for decision. For the reasons stated in this decision and order, Movants' motion for judgment on the pleadings is granted and Movants' motion for relief is granted.

### Facts

In its motion for relief from the automatic stay, brought pursuant to 11 U.S.C. § 362(d) and Fed.R.Bankr.P. 4001(a) and 9014, Movants seek relief from the automatic stay imposed by 11 U.S.C. § 362(a). AEI is the holder of a promissory note signed by Debtor in the original principal amount of $90,000.00. The promissory note, on which Debtor currently owes $73,770.14 plus interest and attorney's fees, is secured by first lien on assets of the Debtor. Copperman has a lease agreement with Debtor covering non-residential property known as the Williamson Road Pancake House, in Roanoke.

### Movants' Position

Movants assert that repayment of the note is in default; they are incurring expenses

---

1. Movant Affordable Efficiencies, Inc., (AEI) was the owner of the equipment and is the obligee of a promissory note signed by the Debtor, repayment of which is secured by a security agreement covering the equipment as itemized in the agreement. Movant Lance Copperman (Copperman) is the lessor shown on the lease agreement for the real property. The term, "Movants," is used in this decision and order to indicate AEI, Copperman, or both of the movants.

2. Movants' oral motion shall be treated as a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c).

with respect to the assets, which are restaurant equipment at the Pancake House, securing the note; they are not adequately protected; the Debtor does not have equity in the equipment; and, therefore, the stay should be lifted with respect to the assets. With regard to the lease, Movants assert that the chapter 7 Trustee did not assume the lease within 60 days after the order for relief and that the Court did not enter an order granting additional time within which to assume or reject the lease.[3] Therefore, Movants argue that the lease has been rejected by operation of law pursuant to 11 U.S.C. § 365(d)(4). Movants allege that neither Debtor nor the Trustee (chapter 7 or 13) has turned over the property: that they continue to incur expenses with respect to the lease; that they are not adequately protected; and that the lease is not necessary for the effective reorganization of the Debtor.

### Debtor's Position

Debtor filed three responses to Movants' motion. In his first response, filed March 18, 1998, Debtor states that he failed to schedule the lease in his chapter 7 case. Debtor also asserts that Movants accepted continued performance by Debtor and thereby waived rejection, de facto assuming the lease; that Debtor assumed the lease in his chapter 13 plan; that Debtor has not defaulted on his obligations under the lease; and that the lease is necessary to the effective reorganization of Debtor. In Debtor's second response, filed March 27, 1998, Debtor asserts that no cause exists to lift the stay because Debtor is current in his rent; he filed a motion to convert to chapter 13 and can pay Movants' claim in chapter 13; the premises are necessary for the effective reorganization; and Movants are adequately protected.

On April 20, 1998, after the hearing on the motion for relief, the Debtor filed an amended response to the motion for relief from

stay. The pre-hearing order, entered March 17, 1998, directs the respondent to "file such responsive pleading as is deemed appropriate within ten (10) days from the date" of that order. While Debtor's first two responses were filed within ten days of entry of the pre-hearing order, his April 20, 1998, response was not filed in time. There is not before the Court a motion to amend Debtor's response. Therefore, the Court will not consider the April 20, 1998, amended response.

### Movants' Oral Motion

At the April 7, 1998, hearing, Movants asserted that they are entitled to judgment in their favor with regard to the equipment on the basis of Fed.R.Civ.P. 8(d). They also asserted that they are entitled to judgment as a matter of law with regard to the lease on the basis of § 365(d)(4). The Court shall treat the motion as one pursuant to Fed. R.Bankr.P. 7012 and Fed.R.Civ.P. 12(c).[4]

### The Secured Note

Fed.R.Civ.P. 12(c) states:

Motions for Judgment on the Pleadings. After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Judgment on the pleadings is available only after the pleadings are closed. *In re Villegas,* 132 B.R. 742, 744 (9th Cir. BAP 1991) (citing *Flora v. Home Federal Sav. and Loan Ass'n,* 685 F.2d 209, 211 (7th Cir.1982)). The pleadings in this case are closed.

---

**3.** The case was filed on January 10, 1997, under chapter 7 of the Bankruptcy Code. On March 30, 1998, upon the Debtor's motion, the case was converted to one under chapter 13.

**4.** Although Rule 7012 is not ordinarily applicable to motions brought under Rule 9014, but rather is applicable in adversary proceedings, Movants

requested such relief. Furthermore, Debtor consents to the application of Fed.R.Civ.P. 12(c) when he argues in his memorandum that Movant's oral motion is governed by Fed.R.Civ.P. 12(c). Therefore, pursuant to Rule 9014 the Court directs that, in this case, Fed.R.Bankr.P. 7012 is applicable to Movants' motion for relief.

A motion pursuant to Fed.R.Civ.P. 12(c) for judgment on the pleadings is subject to the same standard as a motion to dismiss pursuant to Rule 12. The movant must clearly establish that no genuine issue of material fact exists and that judgment is warranted as a matter of law. In addressing a motion for judgment on the pleadings, the Court may consider only those matters presented in the pleadings, the well-pleaded allegations of which are to be taken as true. *In re Jacob (Caez v. Jacob)*, No. 97 B 27010, 97 A 01644, 1998 WL 150493, at *1 (Bankr. N.D.Ill. March 23, 1998) (citations omitted). The Court must accept as true the well-pleaded allegations and draw all reasonable inferences in favor of the non-movant. *In re Lozada (Old Bridge Estates Community Ass'n v. Lozada)*, 214 B.R. 558 (Bankr. E.D.Va.1997).

■ Movants argue that Debtor failed to deny certain allegations in the motion, which are deemed to be admitted under Fed. R.Bankr.P. 7008 and Fed.R.Civ.P. 8(d).[5]

Fed.R.Civ.P. 8(d), made applicable by Fed. R.Bankr.P. 7008, in relevant part states:

Effect of Failure to Deny. Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading. Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided.

Movants assert that Debtor did not respond to the following allegations made in their motion:

● AEI is the holder of claims against the Debtor as follows: ... as evidenced by a Promissory Note dated January 2, 1996 ("Note") in the original principal amount of $90,000.00, the Debtor is indebted to the Bank in the principal amount of $73,770.14, plus interest thereon at the per annum rate of 9% from February 1, 1997 until paid, and attorney's fees of $13,278.63;

● The payment of the Note is properly secured by a first lien on the assets of the

Debtor by a Security Agreement dated February 2, 1996 (restaurant equipment located at Williamson Road Pancake House);

● The Claim of AEI under the Note is in default;

● AEI has incurred and will continue to incur additional expenses with regard to the Collateral securing repayment of the Note of the Bank, which are properly chargeable to the proceeds of the sale of the Collateral, including but not limited to recovery costs and counsel fees;

● AEI is not adequately protected for the reasons set forth above; and

● The Debtor does not have an equity in the Collateral securing the Note of AEI.

Motion for Relief from Stay.

The Debtor filed two responsive pleadings in this case. The pleadings contained the following specific responses:

● The Debtor failed to schedule the lease;

● The movant accepted continued performance by the debtor and waived rejection of the lease and the lease was *de facto* assumed;

● The debtor has assumed the lease in his chapter 13 plan;

● The debtor has not defaulted in his obligation under the lease;

● There is no cause to grant relief from the stay because the debtor is current in the rent;

● The debtor has filed a motion to convert the case and he can pay the movant's claim in his Chapter 13 case;

● The rental premises are necessary for an effective reorganization because the Debtor operates his business at the rental premises, the business is profitable, and it will provide the funding for the Chapter 13 plan; and

● The movant is adequately protected because the debtor is paying the movant rent in accordance with the lease agreement.

---

5. Like Fed.R.Bankr.P. 7012, Rule 7008 is not ordinarily applicable to motions. However, both parties argue the merits of the application of Rule 7008 to the facts, and no party objects to

the application of Rule 7008. Therefore, pursuant to Rule 9014, the Court directs that, in this case, Fed.R.Bankr.P. 7008 is applicable to this motion.

March 18, 1998, Response and March 27, 1998, Response. Of those specific responses, Debtor contends that the following clearly stated an affirmative defense [regarding the equipment], as required by Rule 8(c): "[t]he debtor has filed a motion to convert the case and he can pay the movant's claim in his Chapter 13 plan."[6] Debtor further argues that "[t]his is an adequate response to the motion for relief from stay—the statement is sufficiently broad to cover the movant's claim for payment of the debt for the equipment ...." The Court finds otherwise. There are no circumstances here whereby the Debtor, in converting his case from chapter 7 to chapter 13, materially could change his rights or responsibilities with respect to the equipment and the repayment of the note secured by the equipment. This response appears related to Debtor's argument, discussed infra, that by converting his case to chapter 13 his lease should not be rejected. It would not be reasonable to infer from that single, vague defense, from among eight defenses, that Debtor addressed the motion to lift stay as it pertains to the equipment. Based on the pleadings, the Court finds no genuine issue of material fact and finds that the stay should be lifted as to the equipment pursuant to 11 U.S.C. § 362(d)(1).

### Rejection of the Lease

Movants argue that the lease at issue was rejected pursuant to 11 U.S.C. § 365(d)(4), which provides:

Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60-day period,

fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

Movants assert that due to this provision the lease was rejected by operation of law and that neither the Court nor Debtor, through his conversion from chapter 7 to chapter 13, can revive the lease. Debtor argues that Movants do not have standing to move for relief from the stay; that Debtor failed to schedule the lease;[7] that Debtor gained a new 60-day assumption period starting from the conversion date; and that Movants' conduct estops it from arguing that the lease is rejected.

Regarding Movants' standing to seek the requested relief, Debtor contends that AEI is not a party to the lease at issue and, therefore, is not a party in interest as § 362(d) requires to bring a motion for relief. The lease was made between Copperman and Debtor. An order was entered on April 27, 1998, signed by counsel for Movants and counsel for Debtor, adding Copperman as a movant. Accordingly, the issue of the Movants' standing has resolved itself.

Debtor argues that a new 60-day assumption period began to run when he converted his case to chapter 13. The Debtor relies on *Carrico v. Tompkins*, 95 B.R. 722 (9th Cir. BAP 1989), to support his argument that a new 60-day period began to run upon the conversion. However, *Carrico* does not support the Debtor. In *Carrico*, at issue was a residential lease in a case that was converted from a chapter 11 to a chapter 7. While the Debtors were in chapter 11, they could have assumed or rejected the lease at any time up to plan confirmation, which had not yet occurred in *Carrico*. *See* 11 U.S.C. § 365(d)(2). Therefore, the time within

---

6. Fed.R.Civ.P. 8(c) states:

Affirmative Defenses. In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative

defense. When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation.

7. Apparently, Debtor's point is that because he did not schedule the lease, the Trustee did not know that the lease existed to assume or reject, and somehow Debtor still should be able to assume it.

which to assume or reject had not expired by the time the debtor converted to chapter 7. The court in *Carrico* found that, when a case is converted from chapter 11 to chapter 7, the 60–day period begins to run on the conversion date. The court did not directly address the question of whether a new rejection period commences upon conversion from chapter 7 to chapter 13 after the initial rejection period has run.

■ Other language in *Carrico* is helpful in resolving the issue of whether Debtor's failure to schedule the lease in chapter 7 nullifies the rejection of the lease by the chapter 7 Trustee. In *Carrico,* the chapter 7 Trustee failed to assume or reject within the 60–day period. The debtors argued that the Trustee should be excused from the 60–day limitation because he did not know about the existence of the lease at issue until several weeks into the 60–day period. The court found that argument to be without merit: "the trustee has an affirmative duty to investigate for unscheduled executory contracts or unexpired leases.... Once the 60–day period expired without any action taken by the trustee, the lease was deemed rejected and the court had no authority to revive the lease.... The decision to assume or reject a lease in a chapter 7 setting is solely the trustee's for a sixty day period only." *Carrico* at 724. The ruling in *Carrico* was stated in the context of a residential lease and § 365(d)(1), and the facts can be distinguished. However, it is clear that the *Carrico* court did not believe that a Trustee should be excused from the plain wording of the statute because the 60 day period began to

run before he knew of the lease. *Carrico* follows a plain reading of the statute. In the case at bar, following the plain wording of the statute prevents a situation in which a debtor can manufacture an assumption or rejection period longer than 60 days by initially failing to schedule the unexpired contract or lease and then later bringing to the Trustee's attention the existence of such contract or lease.[8]

No case in the Fourth Circuit directly addresses the § 365(d)(4) issue before the Court. In other § 365(d)(4) contexts, courts appear to differ on the meaning of § 365(d)(4). *See In re Merry–Go–Round Enters., Inc.,* 1996 WL 69688, at *3 (Bankr. D.Md. Jan. 23, 1996) ("maximum exposure for bankruptcy estate, without affirmative action by the trustee, is 60 days, because after 60 days a nonresidential lease that has not been affirmed or rejected is deemed rejected"); *In re The Montaldo Corp.,* 209 B.R. 40 (Bankr.M.D.N.C.1997) ("It is well established that under § 365(d)(4), if the trustee or debtor in possession does not assume or reject an unexpired lease of nonresidential real property within sixty days after the date of the order for entry for relief or file a motion for extension of time to do so, the lease is automatically rejected on the date the sixty-day period expires"). *But see In re Pier 5 Management Co., Inc. (Pier 5 Management Co., Inc. v. Occoquan Riverfront Partnership),* 83 B.R. 392, 394 (Bankr.E.D.Va.1988) ("equitable considerations retain their validity in determining whether a lease should be deemed rejected by operation of law under § 365(d)(4)").[9]

**8.** Although evidence was not taken at the April 7, 1998, hearing, it was noted at that time that the Trustee was aware of the lease because it was discussed at the § 341 meeting, which the Trustee attended. While the facts of the Trustee's knowledge of the lease are not addressed in this decision and order, knowledge of the lease at the time of the meeting of the creditors would only weigh in favor of the Movants' position.

**9.** In *Pier 5,* the debtor filed an adversary proceeding to determine its rights vis-a-vis its landlord with respect to a lease of non-residential real property. The debtor claimed that its landlord knew that the debtor would not assume or reject the lease until the debtor could calculate the amount due as rent each month for the term of the lease, which amount was directly related

to construction costs of a restaurant on the property. The landlord agreed to provide construction cost information to the debtor, though the information was never provided. Based on the representation that the information would be provided, the debtor did not file a motion to extend time within which to assume or reject. The court found that, "[h]aving promised to provide the information necessary to resolve the rent dispute ... the [landlord's] subsequent change of position without notice to Pier 5 operates to estop the [landlord] from asserting the forfeiture of § 365(d)(4)." The court held that the lease was not deemed rejected and that it could be assumed by the chapter 7 Trustee within 60 days of the court's ruling.

In this case, the Court finds persuasive those cases supporting automatic rejection. In addition, the estoppel theory utilized by the court in *Pier 5* should operate to estop the Debtor in the case at bar. The Debtor created the situation by failing to schedule the lease. He is estopped from using his failure to schedule as a lever to recreate a rejection period. Given the plain language of the statute, and absent a motion for extension prior to expiration of the 60 day period, this Court does not have authority to extend the rejection period once the period has run. In the case at bar, the 60–day period ran before the conversion to chapter 13. Therefore, the lease was deemed rejected and conversion to chapter 13 did not give either the Debtor or the chapter 13 Trustee a new 60–day period to assume or reject.

Debtor argues that Movants' "conduct of accepting the lease payments for over a year and failing to take any action to compel debtor to assume or reject the lease estops the movant[s] from arguing that the lease was already rejected." However, the plain language of the statute guides the Court. Section 365(d)(4) states, "... if the *trustee* does not assume or reject ...." (emphasis added). The statute provides the right to the Trustee, and no other party, to assume or reject. The lessor cannot by its actions waive the right of the Trustee. Therefore, Movants are not estopped by their own actions from arguing that the lease was deemed rejected.

Based on the facts in the pleadings, and inferences therefrom, there is no genuine issue of material fact that would have any bearing on the legal issue of whether the lease was rejected.

### Conclusion

For the reasons stated in this decision and order, Movants' allegations in their motion regarding the restaurant equipment must be deemed admitted by Debtor, and the unexpired lease for the Pancake House property is deemed rejected by operation of 11 U.S.C. § 365(d)(4). Accordingly, it is

ORDERED:

That Movants' oral motion for judgment on the pleadings is granted. The automatic stay is lifted with respect to the restaurant equipment. It is

FURTHER ORDERED:

That the Williamson Road Pancake House lease was rejected in the Debtor's previous chapter 7 proceeding. To the extent that the automatic stay is in force in the Debtor's chapter 13 proceeding, it is lifted with respect to the Pancake House lease.