**In re TUBULAR TECHNOLOGIES, LLC, Debtors.**

No. 06–00228–JW.

United States Bankruptcy Court, D. South Carolina.

July 18, 2006.

Todd Boudreaux, Boudreaus and Tisdale, LLP, Evans, GA, for Debtor.

## SUPPLEMENTAL ORDER

JOHN E. WAITES, Bankruptcy Judge.

This matter comes before the Court upon an order entered on July 11, 2006 by the United States District Court for the District of South Carolina ("District Court") regarding a Motion for Stay Pending Appeal ("Motion for Stay") filed by Tubular Technologies, LLC ("Debtor"). Debtor filed a Motion for Stay first before this Court and then before the District

Court to avoid surrendering certain non-residential real property to S–2 Properties, Inc. ("S–2") as ordered by this Court on June 21, 2006 ("Rejection Order"). It appears the District Court does not consider this Court's order of June 28, 2006 ("Stay Order") as adequate for purposes of Fed. R. Bankr.P. 8005 because the Stay Order is based upon the consent of the parties to a stay for a limited period of time and does not otherwise contain sufficiently detailed findings for review.[1] Assuming, as a result of the District Court's order, that this Court maintains jurisdiction to consider the matters addressed in the Stay Order, an order was entered on July 14, 2006 providing a further interim stay of the Rejection Order. In response to the instruction of the District Court and because a full and complete hearing was held on the Motion for Stay filed in this Court from which detailed findings of fact and conclusions of law can be based, this order shall supplement the Stay Order.

Based upon the pleadings provided to the Court and the record developed at the hearing on the Motion for Stay, the Court makes the following findings of fact and conclusions of law.[2]

## FINDINGS OF FACT

1. On October 28, 2004, Debtor entered into a five year lease agreement ("Lease") with S–2 to lease certain nonresidential real property known as 4157 Old Highway 52, Lexington, North Carolina ("Leased Premises").

2. On January 20, 2006, Debtor initiated this case by filing a bankruptcy petition under Chapter 11 of the Bankruptcy Code as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("Reform Act").

3. Debtor disclosed an unexpired lease with S–2 on Schedule G.

4. On December 17, 1998, S–2 granted GrandSouth Bank ("GrandSouth") a Deed of Trust. The Deed of Trust provided GrandSouth with an interest in rental proceeds generated by the Leased Premises, and it further provided that GrandSouth may foreclose on the Leased Premises if S–2 defaults on an agreement with Grand-South. S–2 defaulted on its obligations to GrandSouth; therefore, GrandSouth exercised its right to receive the rent that Debtor paid to S–2 and commenced a foreclosure action to obtain possession of the Leased Premises.

5. After notice to required parties in interest, including Debtor, S–2, Advance Financial Corp. ("AFC"), and O'Neal Steel, Inc., and without objection of any party, on March 22, 2006, the Court granted Grand-South relief from the automatic stay to pursue a foreclosure action and other collection action against S–2 in North Carolina state court. The order modified the automatic stay provided by § 362(a) to

---

**1.** In light of a stipulation between Debtor and S–2 Properties, Inc., and counsels' agreement regarding other matters pending before this Court, including an emergency motion for a Temporary Restraining Order which would provide similar relief as that requested in the Motion for Stay, this Court entered an order that provided for a stay for a limited period. The time period took into consideration the previously planned vacation of Debtor's primary counsel and the desire to avoid taking an immediate emergency request to a yet unassigned judge of the District Court during a traditional holiday period. However, upon the order of the District Court, the Court shall supplement the record of this case and provide findings of fact and conclusions of law and determine whether Debtor is entitled to a stay pending appeal based upon the record developed by the parties attending the bankruptcy hearing on Debtor's Motion for Stay Pending Appeal.

**2.** To the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are also adopted as such.

allow GrandSouth to foreclose. The order also reserved GrandSouth's ability to seek eviction of Debtor from the Leased Premises.

6. According to counsel appearing in this case, the hearing on the foreclosure action by GrandSouth in the North Carolina state court has previously been held. A ruling by the state court is under advisement and may be issued at anytime. Simultaneously, S–2 and its principals have a separate state court action pending against GrandSouth. Otherwise, attorneys for the parties appearing in this Court were uncertain as to the specifics of the proceedings in the North Carolina state court.

7. On May 12, 2006, Debtor moved to extend the time to assume or reject the Lease pursuant to § 365(d)(4)(B)(i) ("Motion to Extend"). In the Motion to Extend, Debtor acknowledged that S–2 is the owner of the Leased Premises.

8. Despite the fact that the Motion to Extend was filed one-hundred twelve (112) days after the petition date, Debtor did not request an expedited hearing or take further action to request the Court to address the Motion to Extend and render a decision prior to May 20, 2006, the one-hundred twentieth day after the petition date. Instead, Debtor filed and served a hearing notice which indicated that a hearing on the Motion to Extend would be scheduled for June 13, 2006 if a return, response, or objection to the Motion to Extend was properly filed with the Court and served on Debtor.

9. On May 26, 2006, S–2 filed a timely objection to the Motion to Extend. In the objection, S–2 asserted that cause did not exist to grant the Motion to Extend. S–2 also noted that pursuant to § 365(d)(4)(B), the Court could not extend the deadline to assume or reject the Lease under § 365(d)(4)(A) because such relief was not granted on or before May 20, 2006. S–2

also asserted that this Court lacked jurisdiction to so act.

10. The various parties that received a notice of the hearing on the Motion to Extend included GrandSouth, AFC, O'Neal Steel, Inc., and S–2.

11. A hearing on the Motion to Extend was conducted on June 13, 2006, one-hundred forty-four (144) days after the petition date. The only parties that made an appearance at the hearing on the Motion to Extend were Debtor, S–2, Ralph J. Kassouf, Todd O. Kassouf, Jeffrey A. Kassouf, Michael Everhart, and Tracy Everhart, and O'Neal Steel, Inc.

12. At the hearing on the Motion to Extend, Debtor indicated that it needed more time to determine whether to assume or reject the Lease because GrandSouth's foreclosure action could affect Debtor's interests in the Leased Premises.

13. During the course of the hearing, Debtor through its counsel, Todd Boudreaux, also admitted that in order to extend the time to assume or reject a nonresidential lease under § 365(d)(4)(B), the Court must extend the time by entering an order within 120 days of filing the bankruptcy petition.

14. Despite the concession, Debtor's counsel asserted that Debtor was, nevertheless, entitled to an extension to assume or reject because (1) S–2 lacked standing to object to the Motion to Extend because under the terms of the Deed of Trust between GrandSouth and S–2, GrandSouth assumed S–2's right to collect rent from Debtor and (2) the deadline for entering an order on Debtor's Motion to Extend should be extended for excusable neglect pursuant to Federal Rule of Bankrupt Procedure 9006 and the Court's inherent equitable authority under § 105(a).

15. The Court, however, rejected Debtor's standing argument in light of the fact

that S–2 was the owner of the Leased Premises and lessor during the 120 days following the petition date in this case (as admitted in Debtor's Motion to Extend). Furthermore, the Court viewed § 365(d)(4)(B) as a self executing statutory provision which required strict compliance before granting an extension of time to assume or reject a nonresidential lease. The Court also rejected Debtor's excusable neglect argument because (1) Debtor failed to present evidence demonstrating excusable neglect and (2) the excusable neglect standard did not apply to the time limits prescribed by statute.

16. Accordingly, in light of the admission made by Debtor's counsel and the plain meaning of the Reform Act's amendments to § 365(d)(4)(B), on June 21, 2006, the Court entered an order which held that Debtor was not entitled to an extension of time to assume or reject the Lease because Debtor failed to obtain an order extending the time to assume or reject before the 120 day deadline prescribed by § 365(d)(4)(B)(i).

17. After denying Debtor's Motion to Extend, the Court concluded that the Lease was deemed rejected; and thus, pursuant to § 365(d)(4)(A), the Court ordered Debtor to "immediately surrender the Leased Premises to S–2." As a result of the Rejection Order, the sheriff of Davidson County, North Carolina accompanied representatives of S–2 to the Leased Premises. Prior to any enforcement action, Debtor's managers instructed employees to leave, and they left without securing the Leased Premises.

18. In response to the Rejection Order, Debtor filed in this Court a notice of appeal, a Motion for Stay, and a Motion to Expedite Hearing on the Motion for Stay

("Request for Expedited Hearing") on June 22, 2006.

19. On June 23, 2006, the Court granted Debtor's Request for Expedited Hearing and provided an interim stay until a further hearing on the Motion for Stay could be held. As a condition of providing interim stay relief, the Court reserved the authority to further grant or deny a stay following a hearing on the merits of the Motion for Stay scheduled for June 27, 2006. Notice of the hearing was provided to all essential parties. As a result of the interim stay, Debtor resumed its business operations.

20. Debtor, S–2, GrandSouth, AFC, and Rubbermaid Commercial Products ("Rubbermaid") were prominent parties in interest that attended the hearing on the Motion for Stay.[3]

21. In support of its Motion for Stay, Debtor contended that it would suffer irreparable harm if a stay pending appeal was not granted because absent such a stay, S–2 would take possession of the Leased Premises and prevent Debtor from operating its business there. Debtor also asserted that its inability to operate at the Leased Premises for two days or more would put Debtor out of business.

22. Debtor further contended that there was a substantial likelihood that it would succeed on the merits of its appeal. In support of that assertion, Debtor cited to *United States v. Stollings,* 516 F.2d 1287 (4th Cir.1975) to demonstrate that a court may extend time in such situations, despite the plain language of a rule or statute establishing a specific time to act.

23. According to Rubbermaid, a closing of Debtor's business would stop the pro-

---

**3.** AFC filed a Motion to Intervene in order to present further arguments concerning Debtor's Motion for Stay. However, given AFC's participation at the hearing on Debtor's Mo-

tion for Stay and the hearing record developed at that time, the Court concludes that the Motion to Intervene and any further hearing are unnecessary.

duction of certain components that Debtor produced for Rubbermaid and subject Rubbermaid to certain contractual fines and a loss of business.

24. GrandSouth noted that its pending foreclosure action in North Carolina state court was nearing a conclusion; and thus, the Court should grant a stay pending appeal because a judgment in Grand-South's favor may deprive S–2 of the right to possession of the Leased Premises. GrandSouth also stated a willingness to consider a new lease agreement with Debtor and allow Debtor to continue operations at the leased premises, if GrandSouth prevailed on the foreclosure action. If Grand-South did not prevail in the foreclosure action or the related separate pending action, S–2's rights as owner of the Leased Premises would remain. As of the date of the hearing on the Motion for Stay, a final adjudication of GrandSouth's foreclosure action remained unresolved. Nevertheless, whether or not GrandSouth ultimately prevails in its foreclosure action, S–2 was the lessor during the applicable 120 days following the petition date.

25. After an announcement of settlement, AFC contended that the stay should be granted because the language of § 365(d)(4) may be constitutionally defective in that it mandates the immediate surrender of nonresidential leased property in possible contravention of state law procedures to recover possession of leased property.

26. In light of the record developed at the hearing, Debtor and S–2 stipulated to a stay until July 12, 2006 to provide parties sufficient time to raise further stay issues before the District Court. Given the parties' consent and after fully considering the evidence, the Court granted a stay pending appeal for a limited period of time.

## CONCLUSIONS OF LAW

Portions of Federal Rule of Bankruptcy Procedure Rule 8005 ("Rule 8005") are an adaptation of Federal Rule of Appellate Procedure 8(a) and (b). *See* Advisory Committee Notes for Fed. R. Bankr.P. 8005. Rule 8005 provides this Court with the discretion to provide a stay pending the appeal of the Rejection Order.

 To determine whether to issue a stay pending appeal under Rule 8005, the Court must examine the following four factors: (1) that Debtor, as the moving party, will likely prevail on the merits of the appeal, (2) that the Debtor will suffer irreparable injury if the stay is denied, (3) that other parties will not be substantially harmed by the stay, and (4) that the public interest will be served by granting the stay. *In re Shenandoah Realty Partners, L.P.,* 248 B.R. 505, 510 (W.D.Va.2000); *In re Wilson,* 233 B.R. 915, 917 (M.D.N.C. 1998); *In re Convenience USA, Inc.,* 290 B.R. 558, 562 (Bankr.M.D.N.C.2003); *In re Hoekstra,* 268 B.R. 904, 906 (Bankr. E.D.Va.2000); *Note Buyers Inc. v. Cooler (In re Cooler),* Nos. 98–02856–W, 98–80162–W, 1999 WL 33486070, at *2 (Bankr.D.S.C. June 29, 1999). *See also Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987) (recognizing the factors for granting a stay of an order pending appeal under Fed. R.Civ.P. 62(c) and Fed. R.App. P. 8(a)); *Long v. Robinson,* 432 F.2d 977, 979 (4th Cir.1970); *Long John Silver's Restaurants v. Cole,* No. Civ. A. 6:05–3039–HFF, 2006 WL 1129403, at *1 (D.S.C. Apr. 26, 2006) (applying factors provided in *Long,* 432 F.2d at 979 to determine whether to provide a stay pending appeal); *United States v. Jones,* No. 2:99–MC–71–11, 1999 WL 1057210, at *1 (D.S.C. Oct.5, 1999) (same); *Faulkner v. Jones,* Civ. A. No. 2:93–488–2, 1994 WL 456621, at *1 (D.S.C. Aug.5, 1994) (same). Debtor, as the party seek-

ing a stay pending appeal, bears the burden of showing each factor. *In re Shenandoah Realty Partners, L.P.,* 248 B.R. at 510. The failure to satisfy any one of the factors precludes the establishment of a stay. *In re Irwin,* 338 B.R. 839, 844 (E.D.Cal.2006) (quoting *In re Deep,* 288 B.R. 27, 30 (N.D.N.Y.2003)).

When analyzing the factors, most courts utilize the method of analysis for preliminary injunctions which requires a court to first balance the hardships to the parties to determine the degree by which a demonstration of a "likelihood of success on the merits" must be made.[4] *See In re Shenandoah Realty Partners, L.P.,* 248 B.R. at 510 (recognizing that if the balance of hardships decidedly favors the moving party seeking a stay, then the court need only find that the moving party raised a substantial question and that if the harms are evenly balanced, then the moving party must make a stronger showing of success on the merits); *In re Wilson,* 233 B.R. at 917 (analyzing stay pending appeal factors under "balance-of-hardships" test utilized in *Direx Israel, Ltd. v. Breakthrough Medical Corp., et al.,* 952 F.2d 802, 813 (4th Cir.1991)); *In re Skinner,* 202 B.R. 867, 868 (W.D.Va.1996) (recognizing that factors of determining whether to grant a stay pending appeal "have been analyzed under the framework set forth in *Blackwelder* [ ], governing preliminary injunctions"); *In re Convenience USA, Inc.,*

290 B.R. at 562 (adopting balance-of-hardship test when analyzing stay pending appeal factors); *In re Hoekstra,* 268 B.R. at 906 ("With respect to the requirement that the party appealing show that it will 'likely' prevail on the merits of the appeal, this court follows the same approach as that articulated by the Fourth Circuit with respect to preliminary injunctive relief in *Blackwelder Furniture Co.*").

Under a balance-of-hardship analysis, a court must first balance the irreparable harm to the party seeking relief against the likelihood of harm to the non-moving party; if the balance of hardships decidedly favors the party seeking relief, then that party must demonstrate a substantial question at issue rather than the more stringent standard of a likelihood of success on the merits. *Safety–Kleen, Inc. v. Wyche, et al.,* 274 F.3d 846, 859 (4th Cir.2001); *Direx Israel, Ltd. v. Breakthrough Medical Corp., et al.,* 952 F.2d 802, 813 (4th Cir.1992); *Blackwelder Furniture Co. v. Seilig Mfg. Co., Inc.,* 550 F.2d 189, 195 (4th Cir.1977). *See also, Chicago Title Insurance Co. v. Resolution Trust Corp., et al.,* 868 F.Supp. 135, 140 (D.S.C. 1994) (describing balance of hardship analysis prescribed by *Blackwelder* ). Substantial questions exist when there are "questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation."

---

**4.** Despite the adoption of the preliminary injunction method of analysis in the context of determining whether to grant or deny a stay pending appeal under Rule 8005, a distinction between the standard for determining the issue of a stay pending appeal and the standard for injunctive relief has been recognized by the Fourth Circuit and the District Court. *See Hoechst Diafoil Co. v. Nan Ya Plastics Corp.,* 174 F.3d 411, 423 n. 5 (4th Cir.1999) ("As we have explained in *Blackwelder,* the standard applicable in a decision granting or denying an injunction is different from that applied to a request for stay pending appeal"); *Fort*

*Sumter Tours, Inc. v. Andrus,* 564 F.2d 1119, 1124 n. 7 (4th Cir.1977) *("Blackwelder* holds that the test is different when a reviewing court is asked to stay a decision of a district court or an administrative agency pending review on the merits. The principal difference is the need of the applicant to make strong showing that he is likely to succeed on the merits"). *See also Long John Silver's Restaurants v. Cole,* 2006 WL 1129403, at *1 ("[I]t is firmly established that [likelihood of success on the merits] is the *sine qua non* of the issuance of a stay pending relief.").

*Safety–Kleen, Inc.*, 274 F.3d at 859 (quoting *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir.1991)). In the order provided by the District Court, the District Court instructs this Court to reference to *Safety–Kleen, Inc.* and *Direx Israel, Ltd.*, two cases which utilize a balance-of-hardships analysis in the context of an injunctive relief dispute. Applying the analysis provided by the Fourth Circuit authority cited by the District Court and in light of the record developed in this case, this Court concludes that Debtor cannot prevail because it has not made a demonstration that there are substantial questions going to the merits of Debtor's appeal so serious, substantial, difficult and doubtful, as to make them fair ground for litigation.

## I. Balancing the Hardships—Irreparable harm to Debtor if stay is denied and whether other parties will not be substantially harmed by a stay

■ Debtor asserted that it would suffer irreparable harm if it is dispossessed as a result of the Rejection Order and its operations cease for two or more consecutive days. Debtor further noted that since it would agree to escrow rents rather than pay GrandSouth, then providing a stay would not substantially harm S–2 during Debtor's pending appeal.

While Debtor did not conclusively demonstrate that other negotiations or action could not result in the continuation of its business, the Court is persuaded that a cessation of operations for any extended period of time would severely harm, possibly irreparably, Debtor. However, since GrandSouth has previously obtained relief from the automatic stay, the Court observes that such a consequence may result from GrandSouth's foreclosure action against the Leased Property. It is noteworthy that Debtor originally sought an extension of time to determine whether to assume or reject because of the threat of the pending foreclosure action in North Carolina state court. Debtor expressed concern that it may be dispossessed or may owe rent to both S–2 and GrandSouth as a possible administrative expense. Absent injunctive relief, this Court may no longer prohibit GrandSouth from asserting and exercising superior rights to the Leased Property against either Debtor or S–2 Properties. The threat to the continuation of Debtor's business as a result of the actions in North Carolina state court already exists. On the other hand, providing a stay would harm S–2 because a stay would further delay S–2's ability to exercise its interests in the Leased Premises, including leaving undetermined for a potentially long period of time whether Debtor would ultimately choose to assume or reject the Lease, a result Congress expressly wished to avoid.

Considering the facts of this case, the balance of hardships weighs in Debtor's favor, but not so significantly as to eliminate the requirement for Debtor to meet all other factors required for a stay.

## II. Likelihood of Success on the Merits

■ Although the balance of hardships may weigh in Debtor's favor, the record of this case indicates that Debtor has failed to demonstrate that it will likely prevail on the merits or, at a minimum, that there is a substantial question for an appeal. *See In re Best Reception Systems, Inc.*, 219 B.R. 988, 994–995 (Bankr.E.D.Tenn.1998) (discussing Rule 8005 and finding that a party must always demonstrate a "serious question" going to the merits of the appealed order, regardless of irreparable harm).

Prior to the Reform Act, courts in this Circuit were split on whether the deadline to assume a lease may be extended after such a time period lapsed pursuant to

§ 365(d)(4). *See Debartolo Properties Management, Inc. v. Devan,* 194 B.R. 46, 51 (D.Md.1996) (finding that the bankruptcy court may not enter an order extending the time period to assume a lease, even upon a motion filed before the expiration of the deadline under § 365(d)(4), if the order is not entered prior to the expiration of the deadline). *But see In re Bane,* 228 B.R. 835 (Bankr.W.D.Va.1998) (implying the bankruptcy court may extend the time to assume a lease if a motion is filed prior to the expiration of the applicable deadline). Prior to the Reform Act, § 365(d)(4) provided:

> ... if the trustee does not assume or reject an unexpired lease of nonresidential real property ... within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60 day period, fixes....

11 U.S.C. § 365(d)(4) (2004).

Some courts interpreted this language as requiring only the "cause" to grant the extension to exist during the first 60 days of the case. *See In re Beautyco, Inc.,* 307 B.R. 225, 229–230 (Bankr.N.D.Okla.2004). These courts would grant a motion to extend so long as the motion was timely filed. *See In re Bane,* 228 B.R. 835 (denying a motion to extend because the motion was not filed in the first 60 days of the case). In *Devan,* the District Court of Maryland rejects the result-oriented approach of these other courts in favor of a plain reading of the statute. *See also Matter of Coastal Indus., Inc.,* 58 B.R. 48 (Bankr.D.N.J.1986) (holding court must rule on motion within 60 days of the petition); *In re Duckwall–ALCO Stores, Inc.,*

150 B.R. 965, 972 (D.Kan.1993) (same); *In re Horwitz,* 167 B.R. 237 (Bankr.W.D.Okla. 1994) (same); *In re DCT, Inc.,* 283 B.R. 442 (Bankr.E.D.Mich.2002) (same).

After the amendments provided by the Reform Act, § 365(d)(4)(B)(i) now plainly provides:

> The court may extend the period determined under subparagraph (A), *prior to the expiration of 120 day period,* for 90 days on the motion of the trustee or lessor for cause.

11 U.S.C. § 365(d)(4)(B)(i) (2006) (emphasis added).

■ This revision by the Reform Act[5] provides Debtor with additional time to make a decision with regard to its leases; however, it clearly provides that if any extension is desired, Debtor must obtain the extension by an order entered within the 120 day period prescribed.[6] This provision encourages debtors to make a prompt decision about their leases and punishes debtors who fail to timely act. *See Devan,* 194 B.R. at 52. The legislative history supports this Court's interpretation of the plain language of § 365(d)(4). Congress, in revising this section, "sought to establish a firm, bright line deadline by which an unexpired lease of nonresidential real property must be assumed or rejected.... An extension of time may be granted, within the 120 day period, .... This provision is designed to remove the bankruptcy judge's discretion to grant extensions of time ...." H.R.Rep. No. 109–31(I), at 88 (2005). Though many of the provisions revised by the Reform Act have been criticized by various courts for lacking clarity, Congress was precise with this particular section. The plain language of

---

**5.** Section 365(d)(4) was revised by Section 404 of the Reform Act.

**6.** As this Court has demonstrated in other matters in this case, it is able to address substantive legal issues on short notice so

long as Debtor properly schedules the hearing or seeks an expedited hearing. *See Ziolkowski,* 338 B.R. 543, 545–546 (Bankr.D.Conn. 2006) (noting the moving party bears the ultimate burden of ensuring that a motion is scheduled for a timely hearing).

the statute and the legislative history each unambiguously indicate that Debtor may not obtain an extension to assume a lease if the extension is not granted within the first 120 days of this case.[7] *See In re Maxway Corp.*, 27 F.3d 980, 982 (4th Cir. 1994) (noting that the sole function of the court is to enforce a statute according to its terms).

The language of revised § 365(d)(4) is so clear that during the hearing on Debtor's Motion to Extend, Debtor admitted that § 365(d)(4) required the Court to enter an order extending the time to assume or reject a lease for a nonresidential real property before the 120th day after Debtor filed its bankruptcy petition. *See* 3 COLLIER ON BANKRUPTCY at ¶ 365.04[4], at p. 365–47 (Lawrence P. King et al. eds., 15th ed. Revised 2005) ("The 2005 Act clarifies at least one ambiguity in the prior language. It is now clear that any order extending the initial 120–day period must be entered before the expiration of the deadline.").

At the hearing on the Motion to Extend the following exchange took place:

Court: So you concede the legal position that Mr. Beal's taking … that it has to be within the time period the Order has to be entered.

Boudreaux: That's correct…. 365 has been amended to provide that the Order needs to be entered but 9006 would give the Court the authority to either extend that deadline or our request would be to enter the Order *nunc pro tunc* effective as of May 18, 2006, which would be within the 120–day period.

*See* Transcript of Hearing on Motion to Extend Time, pgs. 11–12.

This concession, coupled with the plain language of § 365(d)(4), seriously undermines Debtor's ability to prevail on the merits or to present or preserve a substantial question on appeal. At the hearing on the Motion to Extend, Debtor admitted to a view of the law that is contrary to the very argument it must advance on appeal to prevail. Debtor's new argument on appeal and in its Motion for Stay, which is based upon pre-Reform Act law, appears to be barred by judicial estoppel and by the unambiguous language of revised § 365(d)(4).

In a related argument in its Motion for Stay, Debtor also cited to *United States v. Stollings*, 516 F.2d 1287 (4th Cir.1975), for the proposition that a court may consider a timely request for certain substantive relief despite the expiration of the time prescribed for providing such relief. In *Stollings*, the Fourth Circuit determined whether a district court, under Rule 35 of the Federal Rules of Criminal Procedure ("Rule 35"), no longer had jurisdiction to address a motion for reduction of sentence at the expiration of an applicable 120 day period despite the fact that the party seeking relief filed the motion within the time prescribed by Rule 35. The Fourth Circuit held that the district court did not lose jurisdiction by concluding that the district court had jurisdiction to enter an order within a reasonable time after the expiration of the time prescribed by the rule. Debtor's reliance on *Stollings* is misplaced. In this case, Debtor has made no showing

---

7. This addition by the Reform Act is also consistent with other self-executing provisions added to the Bankruptcy Code. *See e.g.*, *In re Cartledge*, C/A No. 06–00119–JW, slip op. (Bankr.D.S.C. Feb. 15, 2006) (denying a motion to extend the automatic stay *sua sponte* because a hearing was not held on the motion

within 30 days of the petition date); *In re Root*, C/A No. 06–00090, 2006 WL 1050687 *4, slip op. (Bankr.N.D.Iowa Apr. 11, 2006) (finding that the automatic stay terminates under § 362(h) for failing to file a statement of intent and that such a time period cannot be enlarged under Rule 9006).

that the failure to enter an order extending the time to assume or reject was due to factors outside of Debtor's control, namely a delay caused by this Court while considering or entering an order. This Court frequently conducts hearings on an expedited basis upon the request of parties to accommodate their needs. Under the record of this case, Debtor made no such request. Furthermore, in *United States v. Breit,* 754 F.2d 526 (4th Cir.1985), the Fourth Circuit appeared to narrow the application of *Stollings* in light of certain Supreme Court decisions, and it concluded that a district court did lack jurisdiction to act beyond such a prescribed deadline.

■ Addressing the arguments *actually made* by Debtor at the hearing on the Motion to Extend, Debtor also asserted that although the requirements of an extension of time under § 365(d)(4) has changed, the Court nevertheless had the ability to extend the time to assume or reject pursuant to Fed. R. Bankr.P. 9006 ("Rule 9006") and § 105 based upon Debtor's excusable neglect or that S–2 otherwise lacked standing to oppose the extension of the deadline.[8] These arguments appear to lack merit and do not give rise to any substantial questions for appeal.

Rule 9006(b) has been amended to now provide as follows:

> when an act is required or allowed or allowed to be done at or within a *specified period by these rules* or by a notice given thereunder or by order of the court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or extended by previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Fed. R. Bankr.P. 9006(b) (as amended by the Interim Amendments to the Bankruptcy Rules) (emphasis added).

■ The language of Rule 9006(b) limits enlargement of time under Rule 9006(b) to a "specified period" provided by the Federal Rules of Bankruptcy Procedure, a notice given under the Rules, or by court order.[9] Accordingly, Rule 9006 does not provide the Court with any authority to extend the time periods prescribed by the *statutory* provisions of § 365(d)(4)(B).[10]

---

**8.** At the hearing on the Motion to Stay, Debtor appeared to abandon its arguments made at the hearing on the Motion to Extend in favor of a position of law that it had earlier conceded. The arguments raised by Debtor at the hearing on the Motion to Extend appear to be the only arguments that Debtor has preserved for appeal in light of the general rule that "a federal appellate court does not consider an issue not passed upon below," *Liberty Corp. v. NCNB of South Carolina,* 984 F.2d 1383, 1389 (4th Cir.1993) (citing *Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976)).

**9.** Rule 9006(a) addresses the computation of time and may be used for computing a period of time prescribed by an "applicable statute." Some courts have held that this rule is not applicable for computing a deadline provided

by statute. *See Barnes v. GMAC (In re Ross),* 193 B.R. 902 (Bankr.W.D.Mo.1996) (finding the 20 day grace period for perfecting a purchase money security interest is not computed under Rule 9006(a)). This matter, however, does not involve the computation of time under Rule 9006(a) but the enlargement of a predetermined deadline pursuant to Rule 9006(b), which, by its terms, applies only to the enlargement of a time period determined by the Federal Rules of Bankruptcy Procedure.

**10.** If there was a conflict in this case between the deadlines set by the Bankruptcy Code and deadlines set by the Bankruptcy Rules, the deadlines set by the Bankruptcy Code control. *See* 28 U.S.C. § 2075; *In re Stoecker,* 179 F.3d 546 (7th Cir.1999) ("[I]n a conflict between the Code and the rules, the Code controls.").

*See In re Root,* C/A No. 06–00090, 2006 WL 1050687,· at \*4 (Bankr.N.D.Iowa Apr.11, 2006) (finding a time period set forth by Title 11 cannot be enlarged under Rule 9006). A majority of other courts have confronted and rejected a similar argument and found that Rule 9006(b) may not be used to enlarge the deadline set by § 365(d)(4), based upon excusable neglect, because Rule 9006(b) applies only to the enlargement of time period set by the Bankruptcy Rules and not deadlines set by statute. *See In re Federated Food Courts, Inc.,* 222 B.R. 396 (Bankr.N.D.Ga.1998); *In re Ott,* 343 B.R. 264 (Bankr.D.Colo. 2006) (finding Rule 9006(b) cannot be used to extend a statutory deadline regardless of excusable neglect); *In re Damach, Inc.,* 235 B.R. 727, 731 (Bankr.D.Conn.1999) (finding excusable neglect may not be used to extend the deadline imposed by § 365(d)(4) and that the deadline imposed by § 365(d)(4) is substantive, rather than procedural, so Rule 9006(b) does not apply). *But see In re Chira,* 343 B.R. 361 (Bankr.M.D.Fla.2006) (finding that Rule 9006 may be applied, in a pre-Reform Act case, to extend the time to assume a lease once an order of extension has been previously and properly granted). A plain reading of Rule 9006(b) precludes its use under the circumstances of this case.

Section 105(a) provides that "the court may issue any order, process, or judgment *that is necessary to carry out* the provisions of this title." 11 U.S.C. § 105(a) (emphasis added). In this case, Debtor is asserting that the Court should use its authority under § 105 to undermine the requirement that an order extending the time to assume or reject must be entered before the 120th day after the petition date in order to obtain a ninety (90) day extension of time to assume or reject under § 365(d)(4)(B)(i). Under the circumstances, it is clear that using the Court's § 105 powers to provide an extension of time to assume or reject under

§ 365(d)(4)(A) without complying with the requirements mandated by § 365(d)(4)(B)(i) is not a means to "carry out the provisions" of the Bankruptcy Code pursuant to the plain language of § 105(a). *See Raleigh v. Illinois Dept. of Revenue,* 530 U.S. 15, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000) ("Bankruptcy courts are not authorized in the name of equity to make wholesale substitution of underlying law controlling the validity of creditors' entitlements, but are limited to what the Bankruptcy Code itself provides."); *Norwest Bank Worthington, et al. v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988) ("[w]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code."); *Gouveia v. Tazbir,* 37 F.3d 295 (7th Cir.1994) ("The Supreme Court has taught that any grant of authority given to the bankruptcy courts under § 105 must be exercised within the confines of the bankruptcy code."); *In re Southwest Aircraft Services, Inc.,* 53 B.R. 805 (Bankr.C.D.Cal.1985) (finding § 105 cannot be used to extend a deadline under § 365(d)(4) since such an extension would not carry provisions of the Bankruptcy Code), *rev'd on other grounds by* 831 F.2d 848 (9th Cir.1987) (finding under § 365(d)(4) that the bankruptcy court may grant a motion to extend after the first 60 days of the case).

 An argument that Debtor may extend the deadline under § 365(d)(4) under a·general theory of excusable neglect also appears to lack merit and proof. *See Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (discussing excusable neglect within the context of Rule 9006(b) and finding that the upheaval of a counsel's practice should be given little weight in determining whether a party has demonstrated excusable neglect). In this case, Debtor's failure to

have a timely hearing on its Motion to Extend was the result of its counsel's failure to request a hearing within the first 120 days of the case. *See* Transcript of Hearing on Motion to Extend Time, pg. 11 (Boudreaux: "The neglect was in not filing the motion for the expedited hearing."). "However, inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute excusable neglect. . . . Also, under *Pioneer*, the client is held accountable for the mistakes or omission of counsel." *In re Roasters Corp.*, No. 98–80704–C–11D, 98–81049C–11D, 2000 WL 33673776, at *4 (Bankr.M.D.N.C. March 14, 2000) (citing and quoting *Pioneer Investment Services Co.*, 507 U.S. at 392, 113 S.Ct. at 1496) (internal citations and quotations omitted). The few cases identified by the Court on this subject each indicate that excusable neglect of an attorney is not sufficient to extend a deadline under the Bankruptcy Code. *See e.g.*, *HML II, Inc. v. Ginley*, 234 B.R. 67 (6th Cir. BAP 1999) (finding debtor's attorney's failure to properly compute the time for filing appeal under Rule 8002(a) due to inadvertently relying upon Fed. R. Bankr.P. 6 and his unfamiliarity with bankruptcy procedure did not constitute excusable neglect); *In re Damach, Inc.*, 235 B.R. at 731–732 (finding excusable neglect may not be used to extend the deadline imposed by § 365(d)(4)); *Airlines Reporting Corp. v. Mascoll (In re Mascoll)*, 246 B.R. 697, 704 (Bankr.D.D.C.2000) (holding that the court cannot extend the limitations period to object to discharge based upon "garden variety excusable ne-

glect"); *In re Belcher*, 293 B.R. 265 (Bankr.N.D.Ga.2001) (finding a new bankruptcy attorney, unfamiliar with bankruptcy practice, may not extend deadlines under the theory of excusable neglect). This Court is also not aware of any controlling case that would allow Debtor to escape the self-executing provisions of § 365(d)(4) based upon counsel's neglect and therefore the Court cannot find, under the circumstances of this case, that excusable neglect presents a substantial question for appeal. Furthermore, Debtor failed to present evidence to support a determination that the neglect was excusable and therefore failed to meet its burden of proof and persuasion.[11]

■ With regard to S–2's standing, Debtor did not further challenge, at the hearing on the Motion to Stay, that S–2 had standing. As the Court previously found in the Rejection Order, applicable law appears to clearly indicate that S–2 was the lessor during the applicable time period and therefore had standing to oppose the Motion to Extend.[12] *See* N.C. Gen Stat. § 42–40(3) (2006) (defining landlord in the residential setting as an owner of the property leased); S.C.Code Ann. § 27–33–10(7) (West 1991) (defining landlord as the "owner . . . of the real estate used or occupied by the tenant. . . ."); *In re Irwin Yacht Sales, Inc.*, 164 B.R. 678, 680 (Bankr.M.D.Fla.1994) (noting that the party in interest with the right to challenge assumption of a lease is the landlord). Debtor also listed S–2 as the landlord in its schedules. Since S–2 owned the

---

11. Debtor's counsel attempted to offer into evidence an affidavit of his staff; however, S2 objected to the affidavit as hearsay. The Court sustained S–2' objection and did not accept the affidavit as evidence.

12. Debtor asserted that GrandSouth was the only party with standing to challenge the assumption of the Lease; however, existing case law seems to indicate otherwise. *See e.g.*, *In

re James Wilson Assocs.*, 965 F.2d 160, 169 (7th Cir.1992) (holding a creditor which held mortgage and assignment of rents in building which debtor had sold and leased back from landlord had no standing to enforce the provision of § 365 which requires debtor to assume or reject an unexpired lease of non-residential real estate within 60 days of bankruptcy filing).

Leased Premises during the first 120 days of the case, the Court believes that it properly found that S–2 had standing to oppose the Motion to Extend or that such standing was otherwise unnecessary based upon the self-executing nature of § 365(d)(4). *See In re Esmizadeh,* 272 B.R. 377, 386 (Bankr.E.D.N.Y.2002) (stating that rejection under § 365(d)(4) is self-executing if the trustee does not timely move to assume); *In Lifequest of Mt. Pleasant, Inc.,* C/A No. 97–06957–W, 1997 WL 33344252, *1, slip op. (Bankr.D.S.C. Nov. 19, 1997) (holding a lease of non-residential real property is rejected if not timely assumed). The Court therefore finds that Debtor's assertion that S–2 lacked standing is not likely to prevail on appeal and does not present a substantial question that would warrant the reversal or remand of the Rejection Order.

Finally, in support of Debtor's Motion for Stay and after the announcement of the resolution of the Motion to Stay, AFC asserted that certain issues concerning the constitutionality of the provisions of § 365(d)(4)(B) provide a substantial question for appeal. This argument essentially challenges whether § 365(d)(4) denies parties due process because it provides for the immediate turnover of the Leased Premises in contravention of typical state law procedures for obtaining possession of leased property. The constitutionality of § 365(d)(4) was not raised by any party at the hearing on the Motion to Extend.

▮▮▮ Nevertheless, the Court notes that the constitutional question raised by AFC appears to be well settled under the law. The Bankruptcy Clause and Supremacy Clause pre-empt this area of state law regarding landlord-tenant relations. Article I, § 8, cl. 4, of the Constitution provides that Congress shall have the power to establish "uniform Laws on the subject of Bankruptcies throughout the United States." Pursuant to the laws enacted under this clause, bankruptcy courts have "exclusive jurisdiction" over the property of a debtor. *See Central Community College v. Katz,* —— U.S. ——, 126 S.Ct. 990, 996, 163 L.Ed.2d 945 (2006). In *Katz,* the Supreme Court noted that states are bound, under the Bankruptcy Clause, by a bankruptcy court's order granting discharge, a right formerly controlled and regulated by the several states. *See id.* The Court finds any constitutional challenge raised by the application of § 365(d)(4) in this case to state law landlord-tenant relations, no more compelling than the challenge, and ultimate denial, of a state's sovereign immunity when faced with the prospect of turnover of preferential transfers as presented in *Katz.*

Further, the mandate in the Rejection Order, which exactly traces the language of the bankruptcy statute in requiring the immediate surrender of the Leased Premises, is also consistent with the general principals of federalism and supremacy of federal laws. *See Cromwell Field Assocs., LLP v. May Department Stores Co.,* 5 Fed.Appx. 186, 188–89 (4th Cir.2001) (noting that the effect of the rejection of a lease is one of the great mysteries of bankruptcy but that the statute nevertheless requires the immediate surrender of the leased premises to the lessor upon the rejection of the lease); *In re U.S. Fax, Inc.,* 114 B.R. 70, 72–73 (E.D.Pa.1990) (finding under the legislative history of § 365 that Congress did not intend for landlords to resort to state law rights once a lease was rejected and that the Supremacy Clause pre-empts this area of state law); *In re Lifequest,* 1997 WL 33344252, at *1 (citing *U.S. Fax* and finding after rejection under § 365(d)(4) that a landlord is entitled to immediate surrender and is not required to seek relief from the automatic stay or to pursue state court eviction procedures). Section 365(d)(4) clearly occupies this area of the law in the context of debtors' relationships with their landlord,

and it requires Debtor, without regard to Debtor's rights at state law, to surrender the Leased Premise upon the rejection of the Lease. The result produced by the Rejection Order is constitutional and consistent with the Supremacy Clause. *See U.S. Fax,* 114 B.R. at 72–73. *See also,* H.R.Rep. No. 109–31(I), at 88 (stating that if a lease is rejected the property shall be surrendered to the lessor). Many other courts have reached similar conclusions under the pre-Reform Act version of § 365(d)(4), which also provided for immediate surrender of nonresidential real property upon rejection of a lease. *See In re Gillis,* 92 B.R. 461 (Bankr.D.Haw.1988); *In re McLean Enterprises, Inc.,* 105 B.R. 928 (Bankr.W.D.Mo.1989); *In re Giles Assos., Ltd.,* 92 B.R. 695 (Bankr.W.D.Tex. 1988). Therefore, the Court does not believe that the constitutional issue raised by AFC presents a substantial question for appeal.

### III. Public Interest

 Debtor, AFC, and Rubbermaid cite to the ripple effect the Rejection Order may have on commerce and their respective financial positions. This Court recognized in the Rejection Order that the consequences of the order may be harsh. Certainly innocent people may lose their employment because of Debtor's failure to act. These consequences are unfortunate but not avoidable under the law relied upon by Debtor.

 In this case, the Court believes that the public interest is best served by enforcing the plain meaning of § 365(d)(4). Although the results of applying § 365(b)(4) may create a difficult result for Debtor and other parties in interest, the Court is mindful that "[i]t is well estab-

lished that when a statute's language is plain, the sole function of the courts-at least where the disposition required by the text is not absurd-is to enforce it according to its terms." *Lamie v. United States Trustee,* 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004). This is a Court that necessarily deals with financial matters. Nearly every order issued in this Court impacts the financial condition of a party in interest and often results in the loss of property deemed critical by a debtor. For certain matters, such as the lifting of the automatic stay, Congress has prescribed a mandatory stay, presumably because it has determined that such an order greatly impacts parties and therefore a temporary stay is necessary provide parties with time to seek appellate review. *See* Fed. R. Bankr.P. 4001(a)(3) (imposing a 10 day stay on orders granting relief from the automatic stay).

In this situation, Congress has not provided for a mandatory stay for the rejection of a lease. Denying the stay and enforcing the unambiguous[13] terms of § 365(b)(4) best serves the public's interests in that such a ruling provides for a uniform application of this newly amended section of the Bankruptcy Code. Accordingly, the Court concludes that the public interests at issue in this case weigh in favor of S–2.

### IV. Conclusion

 Therefore, in light of the analysis provided herein, Debtor's Motion for Stay is denied. Debtor has not presented that it will likely prevail on the merits or that, at a minimum, there is a substantial question for an appeal. Furthermore, the public interest weighs in favor of denying Debtor's Motion to Stay.[14] In light of this

---

**13.** Debtor's concession as to the meaning of the provisions of § 365(d)(4)(B) supports the Court's conclusion that § 365(d)(4)(B)'s terms are unambiguous.

**14.** This Order does not otherwise affect Debtor's agreement to dismiss Adv. Pro. No. 06–80137 with prejudice as Debtor has already

ruling, any temporary stay of the Rejection Order, previously prescribed by this Court, is terminated.

**AND IT IS SO ORDERED.**

received the benefit of the stay bargained by it at the hearing on the Motion to Stay.